UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR CONNECTION CORPORATION, a California Corporation<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company and DOES 1 through 30 inclusive,<br><br>Defendant. | No. 2:12-cv-02910-TLN-DAD<br><br><br>**ORDER** |
| COMCAST CABLE COMMUNICATION MANAGEMENT, LLC,<br><br>Counterclaimant,<br><br>v.<br><br>CLEAR CONNECTION CORPORATION, a California corporation, CLEAR CONNECTION, LLC, an Arizona limited liability company, and KURK MOODY, an individual,<br><br>Counterdefendants. | |

This matter is before the Court on Defendant and Counterclaimant Comcast Cable Communications Management, LLC's ("Comcast") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (See Def.'s Mot. for J. on the Pleadings, ECF 31.) Plaintiff and Counter-Defendant Clear Connection Corporation ("Clear Connection") opposes the motion. (See Pl.'s Opp'n to Def..'s Mot. for J. on the Pleadings, ECF 32.) For the reasons set

1

forth below, Comcast's motion is GRANTED with leave to amend.[1]

## BACKGROUND

This matter arises out of Clear Connection's allegations that Comcast terminated its commercial agreement with Clear Connection to provide cable technician services to Comcast customers. Clear Connection operates a cable engineering, design and installation business. (Pl.'s Compl., ECF 1-1 ¶ 4.) "The bulk of the work done by [Clear Connection] for Comcast . . . related to providing service technicians to Comcast for the servicing of Comcast customers." (Id.) Clear Connection entered into a Preferred Vendor Agreement ("PVA") with Comcast which was periodically supplemented by Statements of Work ("SOW"). (Id. ¶ 7.)

"To Service the geographical [a]reas assigned to" it, Clear Connection "lease[d] several commercial warehousing properties within" the service areas including but not limited to properties located in both Sacramento and Fresno. (Id. ¶ 9.) Clear Connection alleges that in September 2009, Comcast communicated to it a "contractor realignment plan," the purpose of which "was to limit the service technician contractors to Comcast's chosen geographical [a]reas." (Id. ¶¶ 17.) "Under this plan, Comcast informed [Clear Connection] that its sole service area would be Fresno" and "directed [Clear Connection] to shut down operations in all other [a]reas." (Id. ¶ 18.)

Clear connection alleges that Comcast sent it a letter on July 28, 2010, informing Clear Connection that it "would cease performing work for the Central Valley market and would focus its efforts on the South Valley market." (Id ¶ 38.) Clear Connection maintains that this change amounted to a breach of contract "by modifying the contract without [Clear Connection's] consent . . ." (Id.)

Clear Connection further alleges that Comcast represented that it "would reduce the rates it paid to [Clear Connection] for cable installation and servicing" but "despite the 5% decrease in pricing, [Comcast] would provide [Clear Connection] with an increased volume of work which would 'make up' the difference in the decrease in pricing to" Clear Connection. (Id. ¶ 41.) Clear

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2

1  Connection alleges that "[t]he representations made by [Comcast] were in fact false" and that
2  Comcast "intended to decrease the pricing it paid to [Clear Connection] by a reduction of 7.75 to
3  8.1%" and "did not intend to increase the volume of work that it contracted to [Clear Connection]
4  and did not actually increase this volume." (Id. ¶ 42.)
5      Clear Connection alleges that Comcast "made numerous representations to [it] . . . related
6  to the service [a]rea, the amount of work, the volume, and the overall profitability [Clear
7  Connection] would expect as a result of [Comcast's] realignment." (Id. ¶ 27.) Clear Connection
8  alleges that these representations were false and that Comcast's "true motives were to increase
9  profitability" by decreasing Clear Connections service area, total compensation, "and to
10 ultimately terminate [Clear Connection] from providing services to" Comcast. (Id. ¶ 28.) In
11 December 2010, Comcast sent Clear Connection a letter informing it "that it planned to terminate
12 its agreement with [Clear Connection] and offered [Clear Connection] its choice of either a thirty
13 or sixty day notice of termination." (Id. ¶ 24.)
14     Clear Connection filed its complaint in California Superior Court for the County of
15 Sacramento on August 6, 2012, asserting claims for: (1) Fraud in the Inducement; (2) Breach of
16 Contract; (3) Fraud; and (4) Intentional Interference with Contractual Relations. (Id. at 7:3-
17 11:28.) Comcast removed the matter to this court on November 30, 2012, on the basis of
18 diversity of citizenship. (See Def.'s Notice of Removal, ECF 1.)

19 **STANDARD**

20     Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed —
21 but early enough not to delay trial — a party may move for judgment on the pleadings." FED. R.
22 CIV. P. 12(c). Moreover, Rule 12(h)(2) of the Federal Rules of Civil Procedure provides in
23 relevant part that a defense of failure to state a claim upon which relief can be granted may be
24 made by motion for judgment on the pleadings. FED. R. CIV. P. 12(h)(2). When considering a
25 motion for judgment on the pleadings based on a defense of failure to state a claim upon which
26 relief can be granted, a court should employ those standards normally applicable to a motion to
27 dismiss pursuant FRCP 12(b)(6). See Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,
28 Ltd., 132 F.3d 526, 528-29 (9th Cir. 1997); 5B Wright & Miller, Federal Practice and Procedure,

1   Civil § 1368 at 515-16 (3d ed. 2007).

2       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
3   Cruz v. Beto, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every
4   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail
5   Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege
6   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to
7   relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007.  "A claim has facial
8   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
9   inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S.
10  662, 678 (2009) (citing Twombly, 550 U.S. at 556).

11      Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of
12  factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir.
13  1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an
14  unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A
15  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the
16  elements of a cause of action."  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678
17  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
18  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove
19  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not
20  been alleged[.]"  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
21  459 U.S. 519, 526 (1983).

22      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
23  facts to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (quoting
24  Twombly, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .
25  across the line from conceivable to plausible[,]" is the complaint properly dismissed.  Id. at 680.
26  While the plausibility requirement is not akin to a probability requirement, it demands more than
27  "a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  This plausibility inquiry is
28  "a context-specific task that requires the reviewing court to draw on its judicial experience and

1 common sense." Id. at 679.

2     A party asserting claims for fraud must meet the heightened pleadings standard set forth in
3 Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that, "[i]n alleging fraud or
4 mistake, a party must state with particularity the circumstances constituting fraud or mistake.
5 Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."
6 Fed. R. Civ. P. 9(b).

7     In ruling upon a motion to dismiss, the court may consider only the complaint, any
8 exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of
9 Evidence 201. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu
10 Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal.
11 1998).

12     If a complaint fails to state a plausible claim, "'[a] district court should grant leave to
13 amend even if no request to amend the pleading was made, unless it determines that the pleading
14 could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122,
15 1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995));
16 see also Gardner v. Marino, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in
17 denying leave to amend when amendment would be futile). Although a district court should
18 freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to
19 deny such leave is 'particularly broad' where the plaintiff has previously amended its
20 complaint[.]" Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir.
21 2013) (quoting Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)).

22 **ANALYSIS**

23     Comcast moves for judgment on the pleadings as to each of Clear Connection's claims
24 "on the grounds that, even if the material allegations in the Complaint are true, which Comcast
25 denies, judgment on the pleadings without leave to amend is appropriate because Comcast is
26 entitled to judgment as a matter of law." (Def.'s Notice of Mot. for J. on the Pleadings, ECF 30 at
27 1:9-12.) Clear Connection opposes the motion, arguing that it "has pled facts sufficient to state
28 claims for relief that are plausible on their face." (Pl.'s Opp'n to Def.'s Mot. for J. on the

Pleadings, ECF 32 at 2:13-14.)

### A.     Breach of Contract

Clear Connection alleges that Comcast breached the contract when it sent Clear Connection the July 28, 2010, letter "removing the Central Valley from Clear Connection's Coverage area." (ECF 1-1 ¶ 38.) Clear Connection argues that this "change constituted a breach by Comcast" because it unilaterally modified the terms of the agreement without Clear Connection's consent. (Id.)

Comcast argues that "Clear Connection's breach of contract claim is defective as a matter of law because the 2010 PVA entitled Comcast to determine where, whether, and when Clear Connection would perform work." (Def.'s Mem. of P.&A. in Supp. of Mot. for J. on the Pleadings, ECF 31 at 7:20-22.) Comcast maintains that the claim must fail because Clear Connection's allegations flatly contradict the terms of the PVA, which expressly did not "require[] Comcast to assign work to Clear Connection at all, much less assign work in a particular 'service area'" (Id. at 8:16-18.)

Clear Connection, in its opposition, argues that Comcast improperly modified the contract without Clear Connection's consent in violation of the provision of the PVA provision providing that Comcast "may propose amendments to a Statement of Work at any time" and Clear Connection "shall have thirty (30) days in which it shall respond to such proposed amendment." (Pl.'s Mem. of P&A in Opp'n of Mot. for J. on the Pleadings, ECF 32 at 6:12-21.) Clear Connection insists that whether the contract was improperly modified[2] is a question of fact that must be determined by a trier of fact. (Id. at 7:2-3.)

In order to survive Comcast's motion, Clear Connection must plead sufficient facts as to each of the following elements: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  "If the action is

---

[2]     The court finds unavailing Clear Connection's contention that whether a contract was modified is a question of fact. See Holmes Eureka Lumber Co. v. Mitchell-Dorr Realty Co., 222 F.2d 871, 874 (9th Cir. 1955)  ("The construction of the contract, including the modifications, is a question of law which we determine for ourselves.")

1  based on alleged breach of a written contract," as in the instant case, "the terms must be set out
2  verbatim in the body of the complaint or a copy of the written agreement must be attached and
3  incorporated by reference." Harris v. Rudin, Richman & Appel, 74 Cal. App. 4th 299, 307 (1999).
4     Comcast's position that Clear Connection has not established the third element is well-
5  taken.  Specifically, the PVA, attached to Clear Connection's complaint as Exhibit A, expressly
6  provides that Comcast "may terminate a statement of work at any time, and from time to time, for
7  any or no reason, upon written notice to [Clear Connection] may propose amendment to a
8  Statement of Work."  (See ECF 1-1 Ex. A.)  While Clear Connection notes that it had thirty days
9  to respond to such proposed amendment, it does not allege that it in fact responded to Comcast's
10 communication to Clear Connection informing it that Comcast was altering its coverage area.
11 Pursuant to the PVA, the proposed amendment is deemed accepted and becomes part of the
12 existing statement of work if Clear Connection does not respond.  (Id.)
13    Here, Clear Connection's breach of contract claim fails because the plain language of the
14 contract expressly contradicts Clear Connection's claim that the July 28, 2010, letter improperly
15 modified the contract.  See  Hardesty v. Sacramento Metropolitan Air Quality Management Dist.,
16 935 F.Supp.2d 968 (E.D. Cal 2013) (citing Sprewell v. Golden State Warriors, 266 F.3d 979,
17 988–89 (9th Cir.2001))  (explaining that, while the court must accept as true the factual
18 allegations of the complaint, "[t]his rule does not apply to . . . allegations that contradict matters
19 properly subject to judicial notice or to material attached to or incorporated by reference into the
20 complaint."); Ott v. Home Sav. & Loan Ass'n, 265 F.2d 643, 646  n.1 (9th Cir. 1958) ("where the
21 allegations of a pleading are inconsistent with the terms of a written contract attached as an
22 exhibit, the terms of the latter, fairly construed, must prevail over  the averments differing
23 therefrom.")  Not only does the PVA not require that Comcast provide Clear Connection a
24 specific work area, but it also does not require that Comcast provide Clear Connection any work
25 at all.  As such, Defendant's motion for judgment on the pleadings as to Clear Connection's claim
26 for breach of contract is granted.
27 ///
28 ///

**B.     Fraud in the Inducement & Fraud**

Clear Connection alleges that Comcast "made numerous representations to [it] . . . related to the service [a]rea, the amount of work, the volume, and the overall profitability [it] could expect as a result of Comcast's realignment." (ECF 1-1 ¶ 27.) Specifically, Clear Connection alleges that Comcast "executives promised that any loss of revenue to [Clear Connection] as a result of [it] being forced in only one area would be made up by an increase in volume in that area." (Id. ¶ 17.)

Defendant argues that this alleged misrepresentation is barred by the parol evidence rule because it directly contradicts the terms of the parties' fully-integrated agreement. Thus, Defendant maintains that Clear Connection cannot state a plausible claim for either fraud in the inducement or fraud. Clear Connection argues that "the fraud exception to the parol evidence rule allows evidence of the circumstances under which the agreements were made or to which they relate." (ECF 32 at 10:14-17.) Comcast replies that the fraud exception to the parol evidence rule is inapplicable because Clear Connection asserts claims for promissory fraud, which falls outside the exception. (ECF 33 at 6:23-23-7:10.)

California's parol evidence rule provides that "[t]erms set forth in a writing intended by the parties to be a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous agreement."[3] Cal. Civ. Proc. Code § 1856(a); see also Cal. Civ. Code § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.") However, California's parol evidence rule "does not exclude evidence of the circumstances under which the agreement was made  . . . or to establish illegality or fraud." Id. § 1856(g).

///

---

[3]     Clear Connection implicitly concedes that the allegations of the complaint vary from the express terms of the agreement. Clear Connection only argues that the parol evidence rule does not bar consideration of Comcast's alleged oral promises.

Comcast's motion for judgment on the pleadings as to Clear Connection's fraud claims turns entirely on whether the fraud exception to the parol evidence rule applies in the instant case. In support of its contention that the fraud exception to the parol evidence rule does not apply to promissory fraud, Clear Connection relies on Riverisland Cold Storage v. Fresno-Madera Production Credit Association, 55 Cal. 4th 1169 (2013). Riverisland held that the parol evidence rule does not bar evidence of fraudulent promises at variance with terms of the writing. The holding in Riverisland, however, is distinguishable from the instant case in that it was limited to the use of extrinsic fraud evidence "challenging the validity of the agreement itself." Id. at 1174. Clear Connection here, however, does not seek to invalidate the contract; to the contrary, if anything, Clear Connection seeks, via compensatory damages, to enforce the alleged oral promises that the alteration in its work area and decrease in payment would be offset by an increase in work volume. (ECF 11-1 at 8:9-10; 10:23-24.)

Groth-Hill Land Company v. General Motors, LLC, 2013 WL 3853160 (N.D. Cal. Jul. 23, 2013), which, in reaching its conclusion, cites heavily the California Supreme Court's decision in Riverisland, is instructive. In Groth-Hill, similar to the instant action, "plaintiffs in their promissory fraud claim [did] not attack the validity of the . . . agreements"; "[i]nstead, they [sought] to recover based on promises [defendant] allegedly made to them over the phone, promises which run counter to the terms of the written contract." Id. at *15. The court held that the fraud exception rule did not apply in those circumstances and the parol evidence rule excluded any such evidence. Id. at *16.

Here, as was the case in Groth-Hill, Clear Connection "do[es] not attack the validity of the written agreements or argue that [Comcast] breached the written contracts," but rather "argue[s] that because this proceeding deals with a claim of fraud, the parol evidence rule does not apply." Id. at *15. Therefore, Clear Connection is "barred, as a matter of state law, from introducing alleged oral promises which contradict the terms of the [fully integrated] written agreements [Clear Connection] signed with" Comcast. Id. at *16.

///

///

### C. Intentional Interference with Contractual Relations

In support of this claim, Clear Connection alleges that, "pursuant to the promises made to Clear" by Comcast, it entered into a lease agreement with a third party for Clear Connection's "use and occupation relating to storage of warehousing of cable installation and maintenance equipment" in Fresno (ECF 1-1 ¶ 48.) Clear Connection alleges that Comcast intentionally interfered with its warehouse contract when it "terminated [Clear Connection] from installing and servicing its cable operations in the Fresno area . . ." (ECF 1-1 ¶ 51.) Comcast maintains that Clear Connection's claim should be dismissed because "Clear Connection does not contend that Comcast intended to induce or did induce a breach of Clear Connection's alleged lease agreement . . . for use of a warehouse in Fresno or even that the lease agreement has been disrupted in any way." (ECF 31 AT 13:10-12.)

In order to state a plausible claim for intentional interference with contractual relations, Clear Connection must allege facts demonstrating: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  LiMandri v. Judkins, 52 Cal. App. 4th 326, 343 (1997).

Here, Clear Connection has not alleged facts sufficient to establish either the third or fourth elements of its claim. First, Comcast is correct in noting that Clear Connection has not alleged that Defendant engaged in any "intentional acts designed to induce a breach or disruption of the contractual relationship." Id. Clear Connection's allegation that Comcast terminated its relationship with Clear Connection is wholly unrelated to Clear Connection's alleged third-party contract. That Comcast terminated its relationship with Clear Connection does not demonstrate that Comcast *intentionally* interfered with Clear Connection's alleged third-party warehouse contract. Indeed, the court cannot surmise what interest Comcast could rationally have in inducing the breach of the alleged contract. Second, Clear Connection simply has not alleged that there has been an actual breach of the contract. As such, Clear Connection has not stated sufficient facts to establish a plausible claim for intentional interference with contractual relations

and Comcast's motion is therefore granted with leave to amend.

## CONCLUSION

Based on the foregoing, Comcast's motion for judgment on the pleadings is GRANTED with leave to amend. Clear Connection shall file an amended complaint within twenty (20) days of the issuance of this order.

Dated: December 3, 2013

Troy L. Nunley
United States District Judge

11