UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR CONNECTION CORPORATION, a California Corporation | No.  2:12-cv-02910-TLN-CKD |
| Plaintiff, | **ORDER** |
| v. | |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company and DOES 1 through 30 inclusive, | |
| Defendant. | |

| |
|---|
| COMCAST CABLE COMMUNICATION MANAGEMENT, LLC, |
| Counterclaimant, |
| v. |
| CLEAR CONNECTION CORPORATION, a California corporation, CLEAR CONNECTION, LLC, an Arizona limited liability company, and KURK MOODY, an individual, |
| Counterdefendants. |

This matter is before the Court on Defendant and Counterclaimant Comcast Cable Communications Management, LLC's ("Comcast") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)").  (ECF No. 54.)  Plaintiff and Counter-Defendant Clear Connection Corporation ("Clear Connection") opposes the motion.  (ECF No. 55.)  Clear Connection also moves for judgment on the pleadings under Rule 12(c).  (ECF No.

56.)  Comcast opposes the motion.  (ECF No. 59.)  For the reasons set forth below, Comcast's

motion is GRANTED IN PART AND DENIED IN PART and Clear Connection's motion is

DENIED.[1]

## I. BACKGROUND

Clear Connection is a cable installation company incorporated in California.  (Pl.'s First

Am. Compl., ECF 42 at ¶ 1.)  This matter arises out of Clear Connection's allegations that

Comcast terminated its commercial agreement in which Clear Connection was to provide cable

technician services to Comcast customers.  Comcast requires every company that wants to

perform cable installation work for Comcast to sign a Preferred Vendor Agreement ("PVA") or a

substantially similar document.  (ECF No. 42 at ¶ 11.)  Clear Connection entered into a PVA with

Comcast that was periodically supplemented by various Statements of Work ("SOW").  (ECF No.

42 at ¶ 11–12, 28.)  The PVA between Comcast and Clear Connection has substantially the same

terms as agreements Comcast created with other cable installers.  (ECF No. 42 at ¶ 12.)

The PVA contains a list of requirements with which cable installers must comply.  (ECF

No. 42 at ¶ 13.)  Clear Connection notes that the PVA expressly states, "[Comcast] makes no

representation that…the Contractor will receive any Work pursuant to this Agreement."  (ECF

No. 42 at ¶ 14.)  It also contains a statement that, "UNDER NO CIRCUMSTANCES OR LEGAL

THEORY … SHALL [Comcast] BE LIABLE TO CONTRACTOR FOR ANY LOSS PROFITS,

LOSS OF OPPORTUNITY OR ANY OTHER SPECIAL, PUNITIVE, INDIRECT, OR

CONSEQUENTIAL DAMAGES…SUFFERED BY THE CONTRACTOR ARISING IN

CONNECTION WITH…THIS AGREEMENT."  (ECF No. 42 at ¶ 15.)  The PVA requires Clear

Connection to "provide sufficient labor, transportation, tools and equipment necessary to perform

all of the Work required by [Comcast]" (ECF No. 42 at ¶ 17); provide "Key Personnel," dictated

by Comcast, who "are required to spend '*eighty-five percent (85%) of their professional efforts on

behalf of [Clear Connection] to effectuate [Clear Connection's] obligations under this

Agreement*" (ECF No. 42 at ¶ 18 (emphasis in original)); "*obtain all necessary licenses and*

---

[1] Clear Connection's First Amended Complaint also named O.C. Communications as a co-defendant in this action.  (ECF No. 42.)  The Court subsequently dismissed O.C. Communications from the action as an improperly joined party.  (ECF No. 49.)

1   *Permits to perform the Work within the Community*' at its expense" (ECF No. 42 at ¶ 20

2   (emphasis in original)); and "supply…'*its own warehouse and office to house the necessary*

3   *personnel, materials, tools, vehicles, equipment and other items required to manage and complete*

4   *the Work*[,]'" (ECF No. 42 at ¶ 21 (emphasis in original)).  It further includes a non-

5   disparagement clause and prohibits Clear Connection from "*hir[ing], recruit[ing] or solicit[ing]*

6   *for employment[] any Company employee or representative…during the term and for one (1)*

7   *year thereafter[.]*"  (ECF No. 42 at ¶ 22–23 (emphasis in original).)  The PVA requires Clear

8   Connection to keep $7.5 million dollars in insurance coverage as well.  (ECF No. 42 at ¶ 24.)

9       The SOW provided that Comcast "assigned territories to cable installers and laid out the

10   amount Comcast would pay for various cable installation services."  (ECF No. 42 at ¶ 28.)  Under

11   the SOW, Comcast required Clear Connection to maintain "Key Personnel" at its own expense

12   and included "chargeback criteria…allow[ing] Comcast to fine installers for being late to

13   installation appointments and for '*non-compliant quality inspected jobs*.'"  (ECF No. 42 at ¶ 29

14   (emphasis in original).)  Comcast also required that equipment be inventoried and, if unaccounted

15   for, be charged to the cable installer.  (ECF No. 42 at ¶ 29.)  In order to receive work

16   assignments, Comcast required installers to call each morning.  (ECF No. 42 at ¶ 30.)

17       On or about September 2009, Comcast announced a contractor realignment plan.  (ECF

18   No. 42 at ¶ 34.)  Under this plan, Comcast informed Clear Connection that its sole service area

19   would be Fresno and instructed Clear Connection to shut down its service operations outside of

20   Fresno.  (ECF No. 42 at ¶¶ 37–38.)  Clear Connection states that, at the time that the contractor

21   realignment was announced, there were multiple cable installation companies working in multiple

22   markets that openly competed.  (ECF No. 42 at ¶ 34.)  Clear Connection alleges that the

23   realignment plan had the effect of "actively coerc[ing] cable installers to trade key personnel,

24   break leases, …trade fleets of vehicles and take over each other's equipment."  (ECF No. 42 at ¶

25   36.)  Clear Connection states that Comcast continually and repeatedly promised Clear Connection

26   that, although it was being forced into the single market of Fresno, Comcast would make up for

27   Clear Connection's loss of territory by an increased volume of work.  (ECF No. 42 at ¶ 40.)

28   Clear Connection further alleges that it "complied with Comcast's demands at great expense to its

3

1    business and its employees, all while relying on Comcast's promises that clear Connection would

2    receive substantial work in Fresno that would more than make up for the costs of shuttering its

3    Sacramento operations." (ECF No. 42 at ¶ 41.)

4         Clear Connection contends that Comcast's co-defendant, O.C. Communications, was, in

5    reality, Comcast's handpicked installer for the Sacramento area and ultimately the installer for the

6    Fresno work that Comcast had promised to Clear Connection. (ECF No. 42 at ¶ 43.) Clear

7    Connection further contends that "O.C. Communications colluded with Comcast to run Clear

8    Connection out of business." (ECF No. 42 at ¶ 44.) Clear Connection alleges that "[a]fter

9    Defendant O.C. Communications received all the benefits of Clear Connection's prior operations,

10   Comcast fired Clear Connection." (ECF No. 42 at ¶ 45.)

11        Prior to Comcast's notification that it was terminating its contract with Clear Connection,

12   O.C. Communications announced it was hiring and had an ad in the Fresno Bee. (ECF No. 42 at

13   ¶ 47.) Clear Connection alleges that Comcast "intentionally and maliciously used its overbearing

14   market presence to force Clear Connection to give up its business and its employees and put itself

15   in a financially perilous situation." (ECF No. 42 at ¶ 48.) Clear Connection further alleges that

16   O.C. Communications was complicit in Comcast's alleged plan, usurping Clear Connection's

17   operations, employees, and market share. (ECF No. 42 at ¶ 49.) Clear Connection contends that

18   this plan gave O.C. Communications "a virtual monopoly on cable installation services in

19   Sacramento and Fresno." (ECF No. 42 at ¶ 49.)

20        Clear Connection filed its complaint in California Superior Court for the County of

21   Sacramento on August 6, 2012. Comcast removed the matter to this court on November 30,

22   2012, on the basis of diversity of citizenship. (See Def.'s Notice of Removal, ECF 1.) On August

23   1, 2013, Comcast filed a motion for judgment on the pleadings requesting dismissal of all claims

24   Clear Connection asserted in its original Complaint. (ECF Nos. 30, 31.) On December 4, 2013,

25   this Court granted the motion and dismissed Clear Connection's complaint without prejudice.

26   (ECF No. 39 at 11.) On December 24, 2013, Clear Connection filed a First Amended Complaint

27   ("FAC"). (ECF No. 42.) On March 17, 2014, Comcast filed its answer to the FAC and re-

28   asserted its counterclaims. (ECF No. 50.) Comcast then filed the instant motion on May 23,

4

2014.  (ECF No. 54.)  On July 17, 2014, Clear Connection filed a counter-motion for judgment on the pleadings.  (ECF No. 56.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  Moreover, Rule 12(h)(2) provides in relevant part that a defense of failure to state a claim upon which relief can be granted may be made by motion for judgment on the pleadings.  FED. R. CIV. P. 12(h)(2).  When considering a motion for judgment on the pleadings presenting a defense of failure to state a claim upon which relief can be granted, a court should employ those standards normally applicable to a motion to dismiss pursuant Rule 12(b)(6).  *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 528-29 (9th Cir. 1997); 5B Wright & Miller, Federal Practice and Procedure, Civil § 1368 at 515-16 (3d ed. 2007).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

5

1   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

3   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

4   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

5   459 U.S. 519, 526 (1983).

6         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

7   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting

8   *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

9   across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.

10  While the plausibility requirement is not akin to a probability requirement, it demands more than

11  "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is

12  "a context-specific task that requires the reviewing court to draw on its judicial experience and

13  common sense." *Id.* at 679.  A party asserting claims for fraud must also meet the heightened

14  pleadings standard set forth in Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a

15  party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

16  knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P.

17  9(b).

18        If a complaint fails to state a plausible claim, "[a] district court should grant leave to

19  amend even if no request to amend the pleading was made, unless it determines that the pleading

20  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

21  (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*

22  *also Gardner v. Marino*, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in denying

23  leave to amend when amendment would be futile).  Although a district court should freely give

24  leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such

25  leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]"

26  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013)  (quoting

27  *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 622 (9th Cir. 2004)).

28  //

1        **III.   ANALYSIS**

2               A.   Comcast's Motion for Judgment on the Pleadings

3                          i.   *Count I: Cartwright Act*

4        Clear Connection alleges in its first cause of action that Comcast violated the Cartwright

5    Act, Cal. Bus. & Prof. Code § 16700, et seq., by forming an improper combination "with the

6    intent to create local cable installer monopolies, fix prices, and maliciously and fraudulently

7    destroy Clear Connection's business."  (ECF No. 42 at ¶ 50–56.)  Comcast argues that this cause

8    of action should be dismissed because the FAC has failed to: 1) claim a market injury; 2) make

9    any factual allegations to support the formation of a conspiracy between Comcast and O.C.

10   Communications; and 3) demonstrate that Comcast made any "wrongful acts" as part of the

11   conspiracy.  (Mem. in Supp. of Def.'s Mot. for J. on the Pleadings, ECF No. 54-1 at 12–17.)

12       A successful action under the Cartwright Act requires a plaintiff to allege: 1) formation

13   and operation of a conspiracy; 2) wrongful acts done pursuant to thereto; and 3) damage resulting

14   from such acts.  *Marsh v. Anesthesia Servs. Med. Grp.,* 200 Cal. App. 4th. 480, 495 (2011).  "An

15   antitrust claim must plead the formation and operation of the conspiracy and the illegal acts done

16   in furtherance of the conspiracy.  California requires a 'high degree of particularity' in the

17   pleading of Cartwright Act violations, and therefore generalized allegations of antitrust violations

18   are usually insufficient."  *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196

19   (1999).  Comcast argues that Clear Connection has failed to meet this burden.  The Court

20   disagrees.

21                          a.   Allegations of Market Injury

22       First, Comcast asserts that Clear Connection has alleged an improper combination that

23   forms a vertical restraint in trade, which requires a plaintiff to allege an injury to the market.

24   (ECF No. 54-1 at 13.)  Comcast argues that Clear Connection "has not alleged (and could not

25   amend to allege) injury to the market."  (ECF No. 54-1 at 13.)  In response, Clear Connection first

26   maintains that Comcast's actions constitute a type of vertical price restraint that is illegal per se,

27   rather than subject to a standard known as the "rule of reason" and therefore Clear Connection

28   need not present facts to show an injury to the market.  (ECF No. 55 at 10–11.)  Clear Connection

7

1    further states that its complaint provides sufficient support for a reasonable inference that

2    Comcast's actions constitute a per se illegal trade restraint where Comcast allegedly restricted

3    trade by "divid[ing] its territories to create local monopolies, cramm[ing] down prices on

4    installers, and demand[ing] and dictat[ing] the prices for its services."  (ECF No. 55 at 11.)  In the

5    alternative, Clear Connection argues that, even if the Court finds that the rule of reason applies, it

6    cannot decide the reasonableness question at this stage of the litigation because it is an issue for

7    the trier of fact.  (ECF No. 55 at 11–12.)

8        Clear Connection asserts facts consistent with an exclusive dealing arrangement resulting

9    in vertical price restraint, wherein two entities at different levels of production and distribution

10   enter into an exclusive arrangement in an effort to control the market's price for service.  *Pecover*

11   *v. Electronics Arts Inc*., 633 F. Supp. 2d 976, 983 (N.D. Cal. 2009) (internal citation omitted).

12   The Court finds that the rule of reason applies to this type of alleged trade restriction.  "California

13   courts have determined that vertical restraints of trade, such as exclusive dealing arrangements,

14   can violate the Cartwright Act, though they are not illegal per se."  *Id*.  Therefore, the rule of

15   reason must apply.  *Id*. ("The law conclusively presumes manifestly anticompetitive restraints of

16   trade to be unreasonable and unlawful, and evaluates other restraints under the rule of reason.").

17       Generally, a rule of reason analysis requires that the "finder of fact must decide whether

18   the questioned practice imposes an unreasonable restraint on competition, taking into account a

19   variety of factors, including specific information about the relevant business, its condition before

20   and after the restraint was imposed, and the restraint's history, nature, and effect."  *State Oil Co.*

21   *v. Khan*, 522 U.S. 3, 10, 118 S. Ct. 275, 279, 139 L. Ed. 2d 199 (1997).  However, the Court finds

22   that its decision to apply the rule of reason to this claim does not prevent the Court from making a

23   determination on the viability of Clear Connection's claim at this stage of the litigation.  *Marsh*,

24   200 Cal. App. 4th. at 492–499 (upholding a Rule12(b)(6) dismissal of a Cartwright Act claim

25   using rule of reason analysis).  While Clear Connection is correct that the trier of fact must

26   determine the ultimate viability of a trade restraint under the rule of reason, that requirement does

27   not prevent the Court from determining if Clear Connection's claim has met the threshold

28   pleading requirement under 12(c).

Ultimately, the allegations put forth by Clear Connection are sufficient to support its cause of action at this stage. "The unlawful combination or conspiracy must be alleged with specificity … [C]ontracts, combinations or conspiracies in restraint of …trade or commerce cannot be alleged generally in the words of the statute but … facts must be set forth which indicate the existence of such contracts, combinations or conspiracies." *Freeman*, 77 Cal. App. 4th at 196. Clear Connection clearly identifies the entities, Comcast and O.C. Communications, and the market, cable service providers and installers in California regions, including Sacramento and Fresno. (ECF No. 42 at ¶¶ 6–8, 49.) Clear Connection's complaint put forth an allegation of a specific "contractor realignment plan" that permitted Comcast to "create local monopolies for particular cable installers." (ECF No. 42 at ¶ 31.) Clear Connection further alleged that Comcast used its overwhelming market share, along with its restrictive PVAs, to push down market prices and dictate other business terms. (ECF No. 42 at ¶¶ 26, 27, 35, 36, 49.) These allegations are sufficient to meet the requirements under Rule 12(c).

b. <u>Allegations of Conspiracy</u>

Second, Comcast argues that Clear Connection has failed to allege sufficient facts to support the operation of a conspiracy between Comcast and O.C. Communications. (ECF No. 54-1 at 14–16.) Comcast maintains that Clear Connection has made "no allegations regarding the individuals involved in a conspiracy, the date(s) or location(s) of any communications or meetings among the alleged conspirators, the nature of any such communications, or any actions taken in furtherance of the alleged conspiracy." (ECF No. 54-1 at 15.) The Court finds Comcast's characterization to be inaccurate and hereby denies Comcast's motion for judgment on this issue.

The Cartwright Act requires a plaintiff to demonstrate an unlawful trust as "a combination of capital, skill or actions by two or more persons" for enumerated purposes that restrain trade. Cal. Bus. & Prof. Code § 16720. At this stage, a complaint alleging an unlawful trust, or conspiracy, must allege facts sufficient "to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). As Comcast points out, those facts may include a "specific time, place, or person

1    involved in the alleged conspiracy."  (ECF No. 54-1 at 15 (citing *Kendall*, 518 F.3d at 1047).)

2    However, "identifying a written agreement or even a basis for inferring a tacit agreement" may be

3    sufficient where the underlying allegation is a specific one.  *Kendall*, 518 F.3d at 1047.

4         Using this standard, the Court finds that Clear Connection has alleged sufficient facts "to

5    give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin."  *Id*.

6    Clear Connection identifies the "contractor realignment plan" as the source of the conspiracy and

7    September 2009 as the approximate date of its inception.  (ECF No. 42 at ¶ 31.)  Clear

8    Connection explains its allegations that the realignment plan effectively constrained trade and

9    dictated that only one contractor would service a territory.  (ECF No. 42 at ¶ 35.)  Clear

10   Connection states that O.C. Communications intended to take over Clear Connection operations,

11   using Clear Connections employees after Comcast forced Clear Connection to terminate them.

12   (ECF No. 42 at ¶ 43.)  Clear Connection supports this assertion with facts stating that O.C.

13   Communications anticipated Clear Connection's contract termination and placed an

14   advertisement in a newspaper for new employees prior to Clear Connection receiving notice.

15   (ECF No. 42 at ¶ 47.)  The Court finds that these allegations provide sufficient information as to

16   the time, place, and persons involved in the alleged conspiracy, as well as the agreements

17   underlying the conspiracy.

18                          c.   Allegations of Wrongful Acts by Comcast

19        Finally, Comcast argues that Clear Connection has failed to prove Comcast committed a

20   wrongful act, as required for its Cartwright Act claim.  (ECF No. 54-1 at 17.)  Comcast argues

21   that "a business entity's unilateral decision not to do business with a specific entity or to

22   exclusively deal with one provider does not constitute a wrongful act for the purposes of antitrust

23   laws."  (ECF No. 54-1 at 17.)  The Court finds this argument to be an oversimplification of the

24   FAC and reflective of Comcast's habit in these pleadings of arguing the facts it prefers rather than

25   the facts that were asserted.  It is incumbent upon this Court to accept Clear Connection's

26   allegations as true for the purposes of this motion.  *Cruz*, 405 U.S. at 322.  Clear Connection did

27   not simply allege that Comcast decided to stop working with it.  Instead, Clear Connection asserts

28   that Comcast and O.C. Communications engaged in a plan to use "its overbearing market

10

1   presence to force Clear Connection to give up its business and its employees and put itself in a

2   financially perilous situation" and then assisted O.C. Communcations to "usurp[ ] Clear

3   Connection operations, employees, and market share." (ECF No. 42 at ¶¶ 48–49.)  At this stage

4   of the litigation, these facts and assertions are entirely sufficient to establish that Comcast

5   committed a "wrongful act" for the purposes of a Rule 12(c) motion.  For these reasons,

6   Comcast's motion for judgment on the pleadings as to Count I is denied.

7                              *ii.*    *Count II: Civil Conspiracy*

8           Comcast argues that Clear Connection may not bring a claim of civil conspiracy because

9   "it is well established that civil conspiracy is not an independent claim." (ECF No. 54-1 at 18.)

10  While it is correct that a claim of civil conspiracy must attach to some other actionable wrong that

11  fact should not be taken to mean that it is not an independent cause of action.  *Okun v. Superior*

12  *Court*, 29 Cal. 3d 442, 454 (1981) ("A complaint for civil conspiracy states a cause of action only

13  when it alleges the commission of a civil wrong that causes damage.").  "A cause of action for a

14  conspiracy in restraint of trade must allege (1) the formation and operation of the conspiracy, (2)

15  the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or

16  acts." *Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 47 (1998), as modified (Sept.

17  23, 1998)) (internal citations omitted).  Clear Connection presents a clear underlying tort within

18  these requirements – conspiracy committed to restrain trade.  Clear Connection alleges that

19  Comcast and O.C. Communications "conspired to unlawfully eliminate competition and to

20  fraudulently and maliciously injure [Clear Connection's] business." (ECF No. 42 at ¶ 58.)  As

21  discussed in detail in Section III.a.i., *supra*, Clear Connection has pleaded sufficient facts to

22  support its allegations of unfair trade.  Therefore, with these allegations, Clear Connection meets

23  the pleading requirement by alleging facts in support of each element of the claim of civil

24  conspiracy.  For these reasons, the Court denies Comcast's motion for judgment on the pleadings

25  as to Count II.

26                             *iii.*    *Count III: UCL Claim Fails to State a Claim*

27          Clear Connection's third cause of action alleges unlawful business practices under the

28  California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq.  (ECF No.

42 at ¶¶ 61–67.)  Clear Connection alleges that Comcast's business practices are unlawful because they violate the Cartwright Act under California state law, as well as the Sherman and Clayton Acts under federal law.[2]  (ECF No. 42 at ¶ 64.)  Comcast argues that this claim must be dismissed because the underlying Cartwright Act claim, Count I, must be dismissed.  (ECF No. 54-1 at 17.)  Because the Court finds that Clear Connection's Cartwright Act claim survives the motion for judgment on the pleadings, it must similarly deny Comcast's motion with respect to the instant cause of action.  Because the Cartwright Act claim stands, Clear Connection may bring an unlawful business practices claim relying on the Cartwright Act and Comcast's motion as to this count is denied.

### iv.    Count IV: Fraud and Deceit

Clear Connection brings a claim for fraud and deceit as its fourth cause of action.  (ECF No. 42 at ¶¶ 68–77.)  Comcast moves for judgment as to this claim, arguing that it fails in three ways: 1) the parol evidence rule bars evidence of alleged oral representations that contradict the written agreement; 2) Clear Connection has not alleged fraud with the requisite specificity; and 3) Clear Connection has not alleged the elements of a fraud claim.  (ECF No. 54-1 at 18–21.)  The Court finds that the parol evidence rule bars Clear Connection's cause of action as it is currently written and therefore grants judgment in Comcast's favor with leave to amend.[3]

Comcast argues that Clear Connection cannot bring this cause of action because the parties' written agreement directly contradicts the alleged oral misrepresentations, and oral evidence contradicting a written agreement is barred by the parol evidence rule.  (ECF No. 54-1 at 18–19.)  Clear Connection opposes this argument, stating that the cause of action is not barred by the parol evidence rule because the underlying written agreements are unenforceable.  (ECF No. 55 at 6–7.)

---

[2] Comcast argues that Clear Connection has not pleaded sufficient facts to allege that Comcast violated the Sherman and Clayton Acts.  (ECF No. 54-1 at 17.)  The Court agrees.  Aside from its passing reference to the Sherman and Clayton Acts, Clear Connection makes no substantiated allegations that violations under those acts occurred.  (ECF No. 42 at ¶ 64.)  Therefore, Count III cannot stand under the Sherman or Clayton Acts.  To the extent that Clear Connection relies on the violation of the Sherman and Clayton Acts in support of its third cause of action, the claim is dismissed with leave to amend so that Clear Connection may allege facts supporting a violation of the Sherman and Clayton Acts.

[3] Because the Court finds grounds for judgment on the pleadings based on the requirements of the parol evidence rule, it does not reach Comcast's arguments for judgment on other grounds.

1   The Court has already addressed this issue in a previous ruling.  (Order on Mot. for J. on

2   the Pleadings, ECF No. 39.)  In its Order, this Court dismissed Clear Connection's fraud in the

3   inducement claim, finding that Clear Connection's claim was barred by the parol evidence rule.

4   (ECF No. 39 at 9.)  The Court recognized that, although a fraud exception to the parol evidence

5   rule would permit Clear Connection to attack the validity of the underlying agreement, Clear

6   Connection had not made an effort to attack the contract's enforceability.  (ECF No. 39 at 9

7   (citing *Groth-Hill Land Company v. General Motors, LLC*, No. C13-1362-THE, 2013 WL

8   3853160, at *15 (N.D. Cal. Jul. 23, 2013)).)  The Court explained that, while the fraud exception

9   to the parol evidence rule may be used to show that the underlying written agreement was not

10  valid, the exception does not permit general evidence that an extrinsic agreement separate from

11  the written agreement existed.  (ECF No. 39.)  Clear Connection tries to avoid this issue in its

12  current fraud claim by stating that the parol evidence rule does not apply when the written

13  agreements are unenforceable.  (ECF No. 55 at 6–7.)  Unfortunately, Clear Connection fails to put

14  forth any cause of action actually alleging that the underlying written agreements are invalid.

15  Clear Connection simply states in conjunction with its sixth cause of action that it "believes that

16  these written agreements lack consideration and are unenforceable because Comcast didn't bind

17  itself to any performance."  (ECF No. 42 at ¶ 86.)  Unfortunately, that assertion on its own,

18  without further detail and factual support, is not enough to free Clear Connection from the

19  underlying written agreement, therefore requiring the Court to apply the parol evidence rule.

20  Clear Connection cannot simply state that no underlying written agreement exists for the

21  convenience of its fraud and deceit claim.  It must provide factual and legal substantiation for its

22  exemption from the requirements of the parol evidence rule.  Therefore, Clear Connection's

23  fourth cause of action is dismissed with leave to amend.

24              *v.    Count V: Breach of Oral Contract*

25   Comcast similarly argues that Clear Connection's fifth cause of action, alleging breach of

26  oral contract, fails because the alleged oral promise conflicts with the terms of the parties' written

27  agreements.  (ECF No. 54-1 at 24.)  Clear Connection does not address this argument.  For the

28  reasons stated in Section III.a.iv, *supra*, the Court dismisses Clear Connection's fifth cause of

1   action with leave to amend.  In order to maintain that an oral contract existed outside of the

2   parties' written agreement, Clear Connection must put forth sufficient factual and legal analysis

3   arguing that the underlying written agreements are unenforceable.  Without doing so, Clear

4   Connections allegation of breach of oral contract cannot stand.

5   *vi.   Count VI: Breach of Written Contract*

6   Clear Connection brings a claim for breach of written contract.  (ECF No. 42 at ¶¶ 85–90.)

7   Comcast seeks judgment on the pleadings as to this claim, arguing that Clear Connection has

8   failed to identify the contract breached and the express terms or underlying purpose to which the

9   breach is tied.  (ECF No. 54-1 at 24.)  The Court is inclined to agree.

10   In order to survive Comcast's motion, Clear Connection must plead sufficient facts as to

11   each of the following elements: "(1) the existence of the contract, (2) plaintiff's performance or

12   excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the

13   plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "If the action is

14   based on alleged breach of a written contract," as in the instant case, "the terms must be set out

15   verbatim in the body of the complaint or a copy of the written agreement must be attached and

16   incorporated by reference." *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999).

17   Here, Clear Connection has failed as a threshold matter to identify the specific agreement

18   breached.  In fact, the claim itself simply states, "Clear Connection performed all promises in the

19   various written agreements" without any reference to which "various written agreements" the

20   claim refers.  (ECF No. 42 at ¶ 88.)  This vagueness does not meet the most basic of pleading

21   standards under Rule 8(a).

22   Clear Connection's defense on this point is puzzling.  It maintains that the written

23   agreements invoked by Comcast are unenforceable, but pleads this cause of action in the

24   alternative.  (ECF No. 55 at 22.)  Clear Connection states that it "cannot predict in advance how

25   the Court will rule [on the enforceability of the written agreements]" and therefore pleads the

26   cause of action with "as much specificity as possible."  (ECF No. 55 at 22.)  This argument

27   confounds the Court because, as previously stated, Clear Connection has made no legal argument

28   or motion asking this Court to review the enforceability of its written agreements.  *See* Section

14

1    Section III.a.iv, *supra*.  Moreover, while Clear Connection is certainly entitled to allege

2    alternative arguments in relation to other arguments, that does not relieve it of the pleading

3    requirements under Rule 8(a).  Regardless of how tiresome it might feel to Clear Connection to

4    allege specific and factually supported claims that may become moot during the course of this

5    litigation, it is more tiresome to the Court to review, a second time, a breach of contract claim that

6    does not meet the pleading requirements.  Therefore, Clear Connection's sixth cause of action is

7    dismissed with leave to amend.

8                              *vii.     Count VII: Common Counts*

9            Clear Connection's seventh and final cause of action alleges "common counts" against

10   Comcast, stating that Comcast has received benefits from its unjust conduct at the expense of

11   Clear Connection and should be required to disgorge its unjust enrichment.  (EF No. 42 at ¶¶ 91–

12   93.)  Comcast moves for judgment on this claim, arguing that the common counts cause of action

13   does not allege any specific legal theory as required under California law.  (ECF No. 54-1 at 26.)

14   Clear Connection argues that its common counts claim is an appropriate tool to seek a

15   "restitutionary disgorgement as an alternative to a recovery for contractual expectancy."  (ECF

16   No. 55 at 23.)

17           "A common count is not a specific cause of action, however; rather, it is a simplified form

18   of pleading normally used to aver the existence of various forms of monetary indebtedness,

19   including that arising from an alleged duty to make restitution under an assumpsit theory."

20   *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004).  A common count is a unique

21   construction under California law that is not generally subject to dismissal on the grounds of

22   uncertain or insufficient pleading.  *Moya v. Northrup*, 10 Cal. App. 3d 276, 279 (Ct. App. 1970).

23   However, "[w]hen a common count is used as an alternative way of seeking the same recovery

24   demanded in a specific cause of action, and is based on the same facts, the common count is

25   demurrable if the cause of action is demurrable."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.

26   App. 4th 1544, 1559–60 (2007) (citing *McBride v. Boughton*, 123 Cal.App.4th 379, 394–95

27   (2004)).

28           Clear Connection argues that its common count should not be dismissed because it is

                                                  15

1    seeking restitution damages, not expectation damages under a contract cause of action.  (ECF No.

2    55 at 23.)  However, Clear Connection fails to provide any legal support for its contention, and

3    such a conclusion conflicts with the logical application of the common count cause of action.  A

4    common count does not need to be specific as to the "various forms of monetary indebtedness"

5    sought.  *McBride v. Boughton*, 123 Cal. App. 4th at 394.  It does, however, need to be rooted in

6    another specific cause of action and must rely on those same facts.  *Id*.  Therefore, Clear

7    Connection's argument that it seeks a different form of damages is inapplicable.  Under the

8    theory of common counts, Clear Connection need only indicate to which cause of action its

9    common counts claim is attached.

10        Because the Court, through the instant order, has dismissed all FAC counts that would

11   potentially provide the factual basis for these claims, Clear Connection's common count claim

12   must also be dismissed.  However, the Court notes that Clear Connection's common count claim,

13   is sufficient to survive a second demurrer so long as Clear Connection makes clear on which

14   count or counts the seventh cause of action relies and those related claims are sustainable.[4]  For

15   these reasons, Clear Connection's common count claim is dismissed with leave to amend.

16                    B.  Clear Connection's Motion for Judgment on the Pleadings

17        In its Answer to Clear Connection's FAC, Comcast filed three counterclaims: 1) alleging

18   breach of indemnity provisions of two written agreements between the parties; 2) seeking an

19   order from the Court requiring Clear Connection to indemnify Comcast; and 3) seeking

20   declaratory relief from this Court.  (ECF No. 50.)  In support of its counterclaims, Comcast

21   alleges that the parties entered into a PVA on or about January 1, 2009, which contained an

22   indemnification clause.  (ECF No. 50 at 16–17.)  Comcast further alleges that the parties entered

23   into a second PVA on or about May 1, 2010, which also contained an indemnification clause.

24   (ECF No. 50 at 17–18.)  Comcast then argues that these indemnification provisions require Clear

25   Connection to indemnify Comcast for any liability associated with *Delgado, et al. v. Clear*

26   _____

[4] Comcast argues in its reply that Clear Connection may not bring a claim for damages arising out of the underlying
27   written agreements because the binding agreements already define the parties' recovery rights.  (ECF No. 61 at 10.)
The Court does not address this argument under the assumption that Clear Connection intends to dispute the
28   enforceability of these written agreements through proper pleading.  Therefore, the Court anticipates that Comcast's
argument will become moot if Clear Connection opts to file a third amended complaint.

1    *Connection Corp., et al.*, No. 34-2010-00079614, an employee wage payment claim filed in

2    Sacramento Superior Court and subsequently dismissed on April 17, 2014.  (ECF No. 50 at 22.)

3    Comcast "disagrees with Clear Connection's interpretation of the indemnification provisions in

4    the 2009 and 2010 PVAs" and therefore asks this Court to enforce those provisions against Clear

5    Connection with respect to the *Delgado* litigation.  (ECF No. 50 at 22.)  Clear Connection filed a

6    cross-motion for judgment on the pleadings as to these counterclaims.  (ECF No. 56.)

7         Clear Connection makes a number of arguments in support of its motion for judgment on

8    the pleadings.  Clear Connection does not differentiate as to which claims its arguments apply,

9    but because of the similarities in Comcast's counterclaims, the Court will apply each argument to

10   all counterclaims.

11                              *i.  Contract Enforceability*

12        Each of Comcast's counterclaims seek to enforce the indemnity clauses within the 2009

13   and 2010 PVAs.  In response, Clear Connection argues that there is no consideration for the

14   indemnity clauses and they are therefore unenforceable.  (ECF No. 56 at 9.)  This argument is

15   inappropriate under a Rule 12(c) motion.  In considering a motion for judgment on the pleadings,

16   the Court must apply the standards normally applicable to a motion to dismiss pursuant to Rule

17   12(b)(6).  *See Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 528-29

18   (9th Cir. 1997).  That is, a court may not dismiss a complaint in which the plaintiff has alleged

19   "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

20   (quoting *Twombly*, 550 U.S. at 570).  In its brief, Clear Connection does not make any arguments

21   regarding the sufficiency of Comcast's pleadings, but instead argues that there is no consideration

22   for the parties' written agreements by asking this Court to look at documents outside the PVAs,

23   specifically asking the Court to review the parties' SOW, and other statements by Comcast made

24   outside of its counterclaims.  (ECF No. 56 at 9–10.)  At this stage, the Court is permitted only to

25   assess the "facial plausibility" of the "factual content that allows the court to draw the reasonable

26   inference" in favor of the party asserting the claims.  *Iqbal*, 556 U.S. at 678 (2009)  It should be

27   clear to Clear Connection that its argument requires analysis that is outside the scope of what

28   Rule 12(c) requires.

17

1  Clear Connection further argues that Comcast should be prohibited from arguing the

2  defenses of reasonableness, notice, or good faith to save its argument in the face of Clear

3  Connection's proposed grounds for dismissal.  (ECF No. 56 at 11.)  The very fact that Clear

4  Connection attempts to *anticipate* and address Comcast's defenses further illustrates that Clear

5  Connection's entire argument is misplaced at this stage of the litigation.[5]  Because a 12(c) motion

6  requires the Court to look only at the facial plausibility of the claim, the Court cannot grant Clear

7  Connection's motion on these arguments.

8  *ii.   Judicial Estoppel*

9  Second, Clear Connection argues that Comcast should be judicially estopped from

10  asserting that there is consideration and mutuality of obligation for the PVAs because Comcast

11  has previously denied that it had any duty of performance.  (ECF No. 56 at 13.)  Comcast

12  responds by arguing that Clear Connection should be judicially estopped from arguing that the

13  written contracts are unenforceable because it has alleged inconsistent positions throughout its

14  pleadings.  (Def.'s Opp. to Plf's Mot. for J. on the Pleadings, ECF No. 59 at 12–14.)  This Court

15  will not accept either party's argument on judicial estoppel.  In attempting to apply judicial

16  estoppel in this manner, the parties seek to bend the doctrine to an absurd conclusion.

17  The purpose of judicial estoppel is to "protect the integrity of the judicial process by

18  'prohibiting parties from deliberately changing positions according to the exigencies of the

19  moment.'"  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting

20  *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  The application of judicial estoppel is

21  within the discretion of the district court.  *Id.*  In considering whether to apply the doctrine of

22  judicial estoppel, the Court will assess the following factors: "(1) Is the party's later position

23  clearly inconsistent with its earlier position? (2) Did the party succeed in persuading a court to

24  accept its earlier position, creating a perception that the first or second court was misled? (3) Will

25  the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair

26  _____

27  [5] Clear Connection also argues that, if the Court finds consideration for the PVAs and SOW, then Clear Connection is entitled to sue under contractual expectancy.  (ECF No. 56 at 12–13.)  However, the Court finds this argument

28  unclear and entirely unrelated to motion for judgment on Comcast's counterclaims.  Therefore, the Court does not address this argument.

18

1    detriment on the opposing party?" *Id.* (internal quotations omitted).

2         Clear Connection alleges that Comcast argued in its first motion for judgment on the

3    pleadings (ECF No. 30) that it had no duty of performance to Clear Connection under various

4    written agreements.  (ECF No. 56 at 14.)  Clear Connection points to this position as being clearly

5    inconsistent with Comcast's current position and argues that the Court accepted Comcast's

6    position in its Order granting judgment in favor of Comcast on Comcast's first motion for

7    judgment on the pleadings.  (ECF No. 56 at 14.)  But Comcast's positions in its motion for

8    judgment and the instant counterclaim are not "clearly inconsistent" as required by the Ninth

9    Circuit.  *Baughman*, 685 F.3d at 1133.  In its motion for judgment on the pleadings, Comcast

10   makes no arguments as to the mutuality or consideration related to the 2010 PVA, but instead

11   argued that proper enforcement of the 2010 PVA would preclude Clear Connection's claim for

12   breach of contract.  (Mem. in Supp. of Mot. for J. on the Pleadings, ECF No. 31 at 12–14.)  While

13   it is true that Comcast maintains that the 2010 PVA did not require Comcast to provide work to

14   Clear Connection, this argument is not tantamount to a statement that mutuality or consideration

15   does not exist.[6]  Indeed, such an argument would be antithetical to Comcast's argument seeking

16   enforcement of the 2010 PVA.  Likewise, in its counterclaim, Comcast makes no representation

17   as to the mutuality or consideration of the PVAs, although its overall request to enforce the PVAs

18   would suggest that Comcast believes mutuality and consideration do exist.  (ECF No. 50 at 21–

19   22.)  Therefore, the Court finds that Comcast did not assert clearly inconsistent positions.

20         Moreover, Comcast did not "succeed in persuading a court to accept its earlier position"

21   as required by the Ninth Circuit.  *Baughman*, 685 F.3d at 1133.  In its Order dismissing Clear

22   Connection's breach of contract cause of action, the Court wrote, "Clear Connection's breach of

23   contract claim fails because the plain language of the contract expressly contradicts Clear

24   Connection's claim that the July 28, 2010 letter improperly modified the contract."  (ECF No. 39

25   at 7.)  In its decision, the Court found only that, as related to the July 28, 2010 letter, no breach of

26   contract existed because the letter was consistent with the terms of the PVA.  The Court did not

27

28
[6] The Court is puzzled as to why Clear Connection expects the Court to assume that a requirement to provide work to Clear Connection would be the only source of consideration and mutuality within these written agreements.

1  offer any opinion on the mutuality or consideration in the contract.  Therefore, the Court did not

2  accept the position Clear Connection proposes.  For these reasons, the Court must deny Clear

3  Connection's motion to enter judgment against Comcast's counterclaims on the grounds of

4  judicial estoppel. [7]

5        In response to Clear Connection's motion for judgment, Comcast similarly argues that

6  Clear Connection should be estopped from arguing that the parties' written contracts are

7  unenforceable because Clear Connection asserted in its first complaint that the contracts were

8  enforceable.  (ECF No. 59 at 12–13.)  Although resolution of this argument is not required to

9  decide the instant motion, the Court addresses it now so that Comcast is not tempted to resurrect

10  the issue and further waste judicial resources at a later date.  Rule 8(d)(3) permits a party to plead

11  alternative legal arguments, even if they are inconsistent.  *Teledyne Indus., Inc. v. N.L.R.B.*, 911

12  F.2d 1214, 1218 (6th Cir. 1990) ("The doctrine of judicial estoppel does not clash with the right

13  to plead inconsistent claims under Fed.R.Civ.P. 8[(d)(3)]. Rule 8[(d)(3)] concerns the ability to

14  plead alternative legal arguments, even if they are inconsistent or based on inconsistent facts.")

15  The fact that Clear Connection seeks both to enforce the parties' written agreements and to have

16  those written agreements declared unenforceable cannot be a basis for judicial estoppel because

17  such an application of the doctrine would defeat the entire purpose of alternative pleadings.

18  Furthermore, Clear Connection is required to support its causes of action with sufficient factual

19  allegations, requiring that it asserts facts to support both arguments.  This use of conflicting

20  argument stands only to threaten the integrity of the parties, not the Court itself, and is therefore

21  permissible.  *Id*.  The Court will not look favorably on further argument from Comcast that Clear

22  Connection should be estopped from properly pleading arguments in the alternative.

23        *iii.  Permissive Counterclaim*

24        Clear Connection argues that the Court does not have subject matter jurisdiction to hear

25  Comcast's counterclaims because Comcast has failed to show that its claims meet the required

26  $75,000 amount in controversy under 28 U.S.C. § 1332(a).  (ECF No. 56 at 19–20.)  Clear

27

28

[7] Because the Court finds that Clear Connection's argument does not meet the first two factors for the application of judicial estoppel, the Court finds that it would be superfluous to discuss potential prejudice against Clear Connection. Therefore, the Court will not address the third prong of the analysis.

1   Connection further argues that the Court cannot exercise supplemental jurisdiction over

2   Comcast's counterclaims because they do not arise out of the same transaction or occurrence as

3   required under Federal Rule of Civil Procedure 13(a) ("Rule 13(a)").  (ECF No. 56 at 20.)

4   Comcast argues that its counterclaims are considered compulsory counterclaims under Rule 13(a)

5   and, in the alternative, that its counterclaims are permissive counterclaims with their own

6   jurisdictional basis under Rule 13(b).  (ECF No. 59 at 17–22.)  The Court agrees that Comcast's

7   counterclaims have an independent diversity jurisdiction and therefore may remain as permissive

8   counterclaims.

9          Comcast responds to Clear Connection's motion for judgment by first arguing that its

10  counterclaims do not need to meet the requirements of 28 U.S.C. § 1332(a) because its

11  counterclaims are compulsory counterclaims and are therefore subject to supplemental

12  jurisdiction.  (ECF No. 59 at 17–22.)  Rule 13 defines two types of counterclaims: compulsory

13  and permissive.  "Compulsory" counterclaims are claims that "arise[ ] out of the transaction or

14  occurrence that is the subject matter of the opposing party's claim."  FED.R.CIV.P. 13(a).  The

15  Ninth Circuit applies the "logical relationship" test to determine if a counterclaim is compulsory

16  by analyzing "whether the essential facts of the various claims are so logically connected that

17  considerations of judicial economy and fairness dictate that all the issues be resolved in one

18  lawsuit."  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (internal

19  citations omitted).  Here, the Court finds that Comcast's counterclaims do not meet the

20  requirements of the logical relationship test.  Comcast is attempting to enforce the indemnity

21  clause of two of the parties' written agreements as they applied to a state law wage claim filed in

22  Sacramento Superior Court.  Although the PVAs at issue in these counterclaims are also at issue,

23  on different grounds, in Clear Connection's complaint, it does not follow that there is a logical

24  connection.  Comcast asks this Court not only to assess an entirely different section of the PVAs

25  in its counterclaim, but asks it to apply those indemnity clauses to the facts of a state law claim

26  clearly outside its jurisdiction.  Comcast would like this Court to view the legal question at issue

27  here as whether the two PVAs are generally enforceable, thus arguing that the case and

28  controversy is the same.  However, in reality, Comcast asks the Court to look at entirely different

21

1    facts and conduct an entirely distinct legal analysis.  For that reason, the Court finds that Comcast

2    has not offered compulsory counterclaims.

3            However, Comcast is permitted to bring a permissive counterclaim that does "not aris[e]

4    out of the transaction or occurrence that is the subject matter of the opposing party's claim."

5    Fed.R.Civ.P. 13(b).  "Because Comcast's counterclaims are not compulsory, the next question is

6    whether supplemental jurisdiction over the counterclaims nevertheless exists under 28 U.S.C. §

7    1367(a)."[8]  *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005).  Under

8    28 U.S.C. § 1367(a), the Ninth Circuit has found that "only a 'loose factual connection between

9    the claims' is necessary" to establish supplemental jurisdiction.  *CE Distribution, LLC v. New*

10   *Sensor Corp.*, 380 F.3d 1107, 1114 (9th Cir. 2004) (quoting *Channell v. Citicorp Nat'l Svcs., Inc.*,

11   89 F.3d 379, 385 (7th Cir.1996)).  Therefore, because Comcast has established a loose factual

12   connection between the indemnity clauses of the PVAs and the other legal issues related to the

13   PVAs alleged by Clear Connection, the Court finds that it may exercise supplemental jurisdiction

14   over Comcast's counterclaims and therefore denies Clear Connection's motion for judgment as to

15   these claims on jurisdictional grounds.[9]

16           **IV.   CONCLUSION**

17           For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN

18   PART Comcast's Motion for Judgment on the Pleadings (ECF No. 54) and DENIES Clear

19

---

20   [8] The Ninth Circuit has not definitively ruled on the question whether § 1367 jurisdiction can cover permissive
     counterclaims.  The Seventh Circuit has held that 28 U.S.C. § 1367 "case or controversy" analysis applies to both the

21   compulsory and permissive counterclaims under Rule 13.  *Channell v. Citicorp Nat. Servs.*, Inc., 89 F.3d 379, 385
     (7th Cir.1996) ("Now that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the

22   language of the statute to define the extent of their powers.").  Within the Ninth Circuit, trial courts are split.  One
     district court in Arizona found if the counterclaim is permissive, supplemental jurisdiction cannot attach.  *Hart v.*

23   *Clayton–Parker & Associates, Inc.*, 869 F.Supp. 774, 776 (D.Ariz.1994).  In decisions this Court finds persuasive,
     other courts have rejected *Hart* and followed the Seventh Circuit  *See, e.g., Sparrow v. Mazda Am. Credit*, 385 F.

24   Supp. 2d 1063, 1070 (E.D. Cal. 2005); *Koumarian v. Chase Bank USA, N.A.*, C–08–4033 MMC, 2008 WL 5120053
     (N.D.Cal. Dec.3, 2008); *Avery v. First Resolution Mgmt. Corp.*, 06–1812 HA, 2007 WL 1560653 (D.Or. May 25,

25   2007), aff'd, 561 F.3d 998 (9th Cir.2009); *Mostin v. GL Recovery, LLC*, SACV090650AGANX, 2010 WL 668808
     (C.D.Cal. Feb.19, 2010).

26   [9] Even if the Court found that supplemental jurisdiction under 28 U.S.C. § 1367 did not apply to permissive
     counterclaims, as is argued by some district courts within the Ninth Circuit, Comcast's counterclaims would still

27   have an independent basis for diversity jurisdiction.  The parties in this litigation have diversity of citizenship under
     28 U.S.C. § 1332 and Comcast has alleged an amount in controversy in excess of $75,000.  *Crum v. Circus Circus*

28   *Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) ("Generally, the amount in controversy is determined from the face
     of the pleadings.").

Connection's Motion for Judgment on the Pleadings as to Comcast's counterclaims (ECF No. 56).  The Court orders as follows:

1. Comcast's Motion for Judgment as to Counts I, II, III is DENIED.

2. Comcast's Motion for Judgment as to Counts IV, V, VI, VII is GRANTED WITH LEAVE TO AMEND.

3. Clear Connection's Motion for Judgment as to Comcast's Counterclaims is DENIED.

If Clear Connection intends to file an amended complaint, it must submit its filing with 30 days of entry of this Order.  Amendments to Clear Connection's complaint must be limited to only those issues discussed within the instant Order.  Comcast shall have 30 days from the filing of Clear Connection's amended complaint to file an answer.

IT IS SO ORDERED.

Dated:  December 7, 2015

Troy L. Nunley
United States District Judge