DARYL S. LANDY, State Bar No. 136288
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, California 92626
Telephone: 714.830.0600
Facsimile: 714.830.0700
Email: daryl.landy@morganlewis.com

BRIAN C. ROCCA, State Bar No. 221576
SUJAL J. SHAH, State Bar No. 215230
NITIN JINDAL, State Bar No. 257850
KATIE R. GLYNN, State Bar No. 300524
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: 415.442.1000
Facsimile: 415.442.1001
Email: brian.rocca@morganlewis.com
       sujal.shah@morganlewis.com
       nitin.jindal@morganlewis.com
       katie.glynn@morganlewis.com

Attorneys for Defendant and Counterclaimant
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR CONNECTION CORPORATION, a California corporation,<br><br>Plaintiff,<br>v.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No. 2:12-cv-02910-TLN-DB<br><br>**COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 9, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 15th Floor<br>Honorable Troy L. Nunley<br><br>FAC Filed: December 24, 2013<br>Complaint Filed: August 6, 2012 |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Counterclaimant,<br>v.<br><br>CLEAR CONNECTION CORPORATION, a California corporation; CLEAR CONNECTION, LLC, an Arizona limited liability company; and KURK MOODY, an individual,<br><br>Counterdefendants. | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

I.   INTRODUCTION .................................................................................................... 1

II.  THE LAW OF THE CASE PRECLUDES ANY PER SE CLAIM ................... 2

III. CLEAR ABANDONED ITS RULE OF REASON CASE ................................ 3

IV.  CLEAR'S PER SE THEORY FAILS, IN ANY EVENT ...................................... 4

    A.   Hybrid Restraint Claims Are Subject to Rule of Reason ......................................... 4

    B.   No Evidence Supports Clear's Nonsensical Price-Fixing Claim ........................... 5

    C.   There is No Evidence of a Hub-and-Spoke Conspiracy ........................................ 5

V.   CLEAR SUFFERED NO ANTITRUST INJURY OR DAMAGES ................. 8

    A.   Clear Cannot Prove Antitrust Injury ........................................................................ 8

    B.   Clear Did Not Suffer Damages From the Realignment Plan ............................... 10

VI.  CONCLUSION ................................................................................................... 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i                                      Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*49ers Chevrolet, Inc. v. Gen. Motors Corp.*,
   803 F.2d 1463 (9th Cir. 1986)...........................................................................................5

*Avaya, Inc. v. Telecom Labs, Inc.*,
   No. 06-2490, 2009 U.S. Dist. LEXIS 82068 (D.N.J. Sept. 9, 2009) ..................................2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477, 97 S. Ct. 690 (1977) ....................................................................................9

*Clayworth v. Pfizer*,
   49 Cal. 4th 758 (2010) .......................................................................................................9

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986) ...........................................................................................5

*Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc.*,
   459 F.2d 138 (6th Cir. 1972) .............................................................................................8

*Guild Wineries & Distilleries v. J. Sosnick & Son*,
   102 Cal. App. 3d 627 (1980).........................................................................................4, 5

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*,
   602 F.3d 237 (3d Cir. 2010) ..............................................................................................8

*Impro Prods., Inc. v. Herrick*,
   715 F.2d 1267 (8th Cir. 1983) ...........................................................................................8

*In re Pharm. Benefit Managers Antitrust Litig.*,
   No. 06-1782, 2017 U.S. Dist. LEXIS 6987 (E.D. Pa. Jan. 18, 2017) .............................2, 9

*Interstate Circuit v. United States*,
   306 U.S. 208, 59 S. Ct. 467 (1939) ....................................................................................7

*Krehl v. Baskin-Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1981) ...........................................................................................6

*LaFortune v. Ebie*,
   26 Cal. App. 3d 72 (1972)..................................................................................................6

*Marsh v. Anesthesia Servs. Med. Gp., Inc.*,
   200 Cal. App. 4th 480 (2011).............................................................................................9

*Morales v. City of Delano*,
   852 F. Supp. 2d 1253 (E.D. Cal. 2012) .............................................................................3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii                                    Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*N. Pac. Ry. Co. v. United States*,
  356 U.S. 1, 78 S. Ct. 514 (1958) ..........................................................................................4

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ................................................................................................4

*Sitkin Smelting & Ref. Co. v. FMC Corp.*,
  575 F.2d 440 (3d Cir. 1978) .................................................................................................5

*United States v. Apple*, *Inc.*,
  791 F.3d 290 (2d Cir. 2015) .................................................................................................7

*United States v. Cuddy*,
  147 F.3d 1111 (9th Cir. 1998) ..............................................................................................2

*United States v. Estrada-Lucas*,
  651 F.2d 1261 (9th Cir. 1980) ..............................................................................................2

*United States v. Gen. Motors Corp.*,
  384 U.S. 127, 86 S. Ct. 1321 (1966) ....................................................................................7

*United States v. Parke-Davis Co.*,
  362 U.S. 29, 80 S. Ct. 503 (1960) ........................................................................................7

*Walker v. USAA Ins. Co.*,
  474 F. Supp. 2d 1168 (E.D. Cal. 2007) ................................................................................5

*White Motor Co. v. United States*,
  372 U.S. 253, 83 S. Ct. 696 (1963) ......................................................................................4

**STATUTES**

Cartwright Act ..............................................................................................................................3, 5

## I.  INTRODUCTION

Clear's summary judgment opposition abandons any pretense that it can prove its rule of reason antitrust claim. Instead, Clear attempts a "bait and switch" by arguing that Comcast's realignment plan was *per se* illegal. But this Court already considered and rejected Clear's argument for a *per se* analysis in its ruling on Comcast's Motion for Judgment on the Pleadings (MJOP). Specifically, this Court considered the facts alleged in Clear's complaint and held that the rule of reason was the appropriate analysis. That ruling was correct and is now the law of the case. This Court afforded Clear the opportunity in its MJOP Order to amend its complaint, but Clear did not do so. And Clear never pursued a *per se* analysis in discovery, presumably because this Court had foreclosed such a theory. Clear's eleventh hour theory fails as a matter of law, and its refusal to address Comcast's arguments under the rule of reason constitutes waiver. The Court should grant Comcast's motion on this basis alone.

Even if this Court were to consider the *per se* arguments raised by Clear, the evidence does not support any claim under Clear's various last-ditch theories. The undisputed evidence shows that Comcast unilaterally adopted the realignment plan, which designated a preferred vendor in a given area to provide installation services. The realignment plan, without dispute, was *procompetitive* and led to better service for Comcast subscribers. Clear benefited from the plan as it was chosen to provide service to Comcast in two areas after realignment. And, as Clear now concedes, competition continued between the contractors after realignment, thus proving that the plan was not anticompetitive. Indeed, continued competition allowed Comcast to choose a different contractor after it exercised its contractual right to terminate Clear's contract for substandard performance. Thus, Clear was not damaged by the realignment plan, but by its own faulty performance. Clear's use of antitrust buzzwords such as "hybrid restraint," "price fixing," "market allocation" or "hub-and-spoke conspiracy"—untethered to any coherent theory of anticompetitive harm—cannot overcome these undisputed facts.

In sum, Clear jettisoned the rule of reason, while desperately invoking an incoherent *per se* theory and failing to cite any disputed material fact. Summary judgment should be granted.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## II. THE LAW OF THE CASE PRECLUDES ANY *PER SE* CLAIM

Clear argues that its pleadings allow it to pursue a *per se* horizontal conspiracy claim and that it has "consistently pled and argued the same theory of recovery." Opp. 8 (Dkt. No. 123). But this Court previously considered and rejected Clear's contention that the *per se* analysis applies after examining all the facts alleged in Clear's complaint:

> Clear Connection further states that its complaint provides sufficient support for a reasonable inference that Comcast's actions constitute a per se illegal trade restraint …. Clear Connection asserts facts consistent with an exclusive dealing arrangement resulting in vertical price restraint …. <u>The Court finds that the rule of reason applies to this type of alleged restriction</u>.

MJOP Order 7-8 (Dkt. No. 65) (emphasis added). This "law of the case" precludes Clear from contradicting the Court's express legal conclusion of which standard applies.

"A decision of law in a case, once made, becomes the 'law of the case,' and should not be changed absent clear error in the original ruling or a change in the relevant circumstances." *United States v. Estrada-Lucas*, 651 F.2d 1261, 1263-64 (9th Cir. 1980); *see also United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) ("The law of the case doctrine provides that a court is generally precluded from reconsidering an issue that has already been decided by the same court…."). This doctrine "instructs courts to adhere to decisions of law, once made, throughout the course of a case in the absence of extraordinary circumstances." *Avaya, Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2009 U.S. Dist. LEXIS 82068, *36-37 (D. N.J. Sept. 9, 2009) (court's prior determination that rule of reason applied was law of the case even though it did not explicitly dismiss the counterclaimants' *per se* claims); *see also In re Pharm. Benefit Managers Antitrust Litig.*, No. 06-1782, 2017 U.S. Dist. LEXIS 6987, *14 n.6 (E.D. Pa. Jan. 18, 2017) ("The determination that the rule of reason and not the per se rule applied to the [challenged conduct] is the law of the case" and cannot be revisited absent "extraordinary circumstances.").

Here, Clear does not address the "law of the case" doctrine and offers no reason for the Court to reverse its previous ruling. To the contrary, Clear argues the same theory it pursues now was present in its complaint. But if so, the theory was before the Court when it ruled. Clear cannot now argue the Court erred in rejecting any horizontal conspiracy theory since Clear never

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sought reconsideration of the Order and declined to amend its complaint, despite having leave to do so. *See* Order 23. Clear points to no "clear error" or "extraordinary circumstances" to justify reconsideration of the Court's finding that "the rule of reason must apply." Order 8.[1]

### III.   CLEAR ABANDONED ITS RULE OF REASON CASE

Comcast set forth five independent reasons why Clear's Cartwright Act claim fails under the rule of reason. MSJ 7-16 (Dkt. No. 98). Clear claims the undisputed facts supporting Comcast's motion are "immaterial" because it is asserting a *per se* violation. *See generally* Response to SUF (Dkt. No. 127). Clear has thus expressly abandoned its rule of reason claim. Moreover, Clear does not dispute, and therefore concedes, that Comcast's realignment led to increased efficiency—*e.g.*, fewer points of contact, more accountability, improved customer service and lower costs. MSJ 6, 16. Professor Asker's opinion as to the procompetitive nature of the realignment is entirely unrebutted. Expert Report of John Asker (Dkt. No. 94-1) ¶¶ 134-135 (realignment plan had a "fundamentally procompetitive business purpose" and, based on performance data, "a procompetitive effect"). That, alone, is dispositive. "Where a defendant moves for summary judgment and the plaintiff does not oppose or raise the claim in opposition, the claim is deemed abandoned." *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1271 (E.D. Cal. 2012) (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).[2]

But Clear did more than simply waive its rule of reason claim—it *affirmatively endorsed* many of the facts proving that its rule of reason case fails. Clear states that "Comcast did not have the market power in the relevant market," (Opp. 1), even though a plaintiff under a rule of reason analysis must first prove the defendant has market power in a relevant market. *See* MSJ 12. Clear also admits that contractors could "easily shift[] their workforce to other customers," (Opp. 14),

---

[1] Comcast sought discovery from Clear regarding "any effect or impact on competition or pricing caused by Comcast," which is only relevant under a rule of reason analysis. *See* Rocca. Aff., Ex. 40 (Clear's Response to Comcast's Amended 1st Set of RFPs, RFP No. 55). Tellingly, Clear did not object that the request was irrelevant because it was only pursing a *per se* claim. It only objected that the request was "premature expert discovery." *Id*. Clear never submitted an expert report to show any competitive effects or why a *per se* analysis is appropriate in this case.

[2] Because Clear's conspiracy and UCL claims are derivative of its Cartwright Act claim, they fail for the same reasons. *See* MSJ 17-18.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3   Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   conceding that nothing forced Clear to go along with the realignment plan and disproving any
2   notion of coercion. Clear's CEO admitted as much, stating that Clear "[a]bsolutely" "could have
3   walked away at [the] point when [Comcast] assigned [Clear] Fresno" or "at any moment during
4   that process." Rocca. Aff. Ex. 11 (Moody Dep. at 152:17-20; 153:16-19) (Dkt. No. 100-11). And
5   Clear admits that "the Contractors remained competitors throughout the realignment," (Opp. 9),
6   which proves there was no anticompetitive restraint at all and no foreclosure. *See* MSJ 9; 15.

Despite these concessions, Clear asks this court to *assume* the realignment plan was anticompetitive under a *per se* analysis precisely because it has no evidence the plan harmed competition and the undisputed evidence is that it was procompetitive. But *per se* condemnation is reserved for anticompetitive conduct that has a "pernicious effect on competition" and that lacks "any redeeming virtue." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S. Ct. 514, 518 (1958). In essence, Clear is asking the Court to ignore the undisputed evidence that shows why a *per se* analysis is inappropriate in this case.

## IV.   CLEAR'S *PER SE* THEORY FAILS, IN ANY EVENT

Clear does not dispute and therefore concedes that to the extent the realignment plan is a vertical territory allocation—in which Comcast vertically established vendor service areas—it is subject to the rule of reason. MSJ 9-10; *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 733-34 (9th Cir. 1987); *see also White Motor Co. v. United States*, 372 U.S. 253, 263, 83 S. Ct. 696, 702 (1963) ("vertical territorial limitation" subject to rule of reason). Instead, Clear mischaracterizes the realignment plan as either a *per se* horizontal market allocation agreement— in which market competitors agree to divide the market— or *per se* price fixing. But Clear's grounds for *per se* treatment fail to withstand even minimal scrutiny.

### A.   Hybrid Restraint Claims Are Subject to Rule of Reason

Clear first claims that because Comcast has in-house technicians that perform cable installations—and is therefore allegedly in both a horizontal and vertical relationship with cable installers—the realignment plan was actually a "hybrid restraint" subject to *per se* analysis. Opp. 10 (citing *Guild Wineries & Distilleries v. J. Sosnick & Son*, 102 Cal. App. 3d 627 (1980)). But the Ninth Circuit expressly rejected the reasoning in *Guild Wineries* and held that so-called

hybrid restraints are subject to the rule of reason under the Cartwright Act. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482-83 (9th Cir. 1986). This Court is bound by *Dimidowich*, which held that "*Guild Wineries* is flawed" and predicted that the California Supreme Court would not apply a *per se* analysis to hybrid restraints. *Id.*

### B. No Evidence Supports Clear's Nonsensical Price-Fixing Claim

Next, Clear vaguely claims that Comcast engaged in horizontal or vertical price-fixing subject to *per se* analysis. Opp. 11-12. But the only reference to prices is that Comcast, as the *buyer* of a service, sought a 5% reduction in the price it paid to installation vendors. Clear fails to explain how that could ever amount to price-fixing.

Vertical price-fixing is when firms at two different levels of the market agree on the price to be charged *to a third party. See, e.g.*, *Sitkin Smelting & Ref. Co. v. FMC Corp.*, 575 F.2d 440, 446 (3d Cir. 1978) ("In vertical price-fixing cases, the prices fixed are resale prices charged to third parties and not the price between the conspiring parties themselves."); *see also 49ers Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1468 (9th Cir. 1986) (vertical price fixing claim failed because the challenged agreement did not "involve any kind of resale" and was "best characterized as agreements between [defendant] and its dealers to establish a price at which [defendant] will buy… parts and services," which is "not manifestly anti-competitive").

There is also no evidence of horizontal price-fixing. There is no claim or evidence that Comcast agreed with its competitors (DirecTV, Dish, etc.) on the price offered for installation services. Nor is there any evidence that contractors (such as Clear and OCC) agreed with one another on the price to charge Comcast. Comcast's unilateral decision to offer to pay all of its installation vendors based on a similar price structure is a common practice and is no more a "price fix" than the decision by an insurance company to dictate the price it is willing to pay for repair services. *Walker v. USAA Ins. Co.*, 474 F. Supp. 2d 1168, 1175 (E.D. Cal. 2007) ("buying and selling with an agreement on transaction prices" is "not price-fixing").

### C. There is No Evidence of a Hub-and-Spoke Conspiracy

Finally, Clear claims Comcast is liable for a coordinating a hub-and-spoke conspiracy to allocate markets because it "convinced" contractors "not to compete with each other in certain

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5   Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

geographic areas." Opp. 15; *see also id.* 9-10, 13-17. Clear's *per se* hub-and-spoke conspiracy fails at the outset, however, because Clear confuses a *horizontal* market division (subject to *per se* analysis) with *vertical* market allocation. Although vertical territorial allocation may superficially resemble horizontal market division because competitors are assigned specific territories, a territorial allocation imposed by a vertical actor is considered vertical and analyzed under the rule of reason. *See, e.g.*, *LaFortune v. Ebie*, 26 Cal. App. 3d 72, 75 (1972) (although "vertical territorial limitations…contain aspects of both horizontal and vertical agreement," a "division of territory" that "came from above and did not originate in agreement negotiated by or dominated by competitors" was vertical and subject to rule of reason); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1355 (9th Cir. 1981) (no horizontal agreement when "allocation of territory was dictated unilaterally by [vertical defendant]"). It is undisputed that Comcast unilaterally adopted and imposed the realignment plan on contractors. SUF 42-43, 48 (Dkt. No. 99). Thus, as this Court already held, it is properly viewed as *vertical* rather than horizontal in nature.

Moreover, a true horizontal market allocation scheme reduces competition by giving each horizontal competitor a "monopoly" over a territory.[3] It would have made no economic sense for Comcast to facilitate horizontal market allocation, because, as the buyer, it could be "held hostage." SUF 28. Of course, Comcast would not, and did not, prevent competition between contractors to provide services in each area, as is reflected in the underlying contracts between Comcast and the contractors. *See* MSJ 14-15. Clear concedes as much, noting that "the Contractors remained competitors throughout the realignment." Opp. 9. In fact, this continued competition is what caused Clear to lose the work it had retained after the realignment to OCC.

The cases Clear cites confirm this distinction. In each case involving a hub-and-spoke type of conspiracy, a vertical "hub" coordinated a *per se* horizontal conspiracy that harmed competition through some adverse effect on third parties (e.g., consumers or competitors who

---

[3] Importantly, the realignment only applied to services sold to Comcast; contractors were free to sell their services to other buyers in any area. SUF 42-43; 60. Thus, there was no actual horizontal market division. Clear claims in its brief, without citation, that there was an "explicit condition that Comcast put on contractors that they not work for other MSOs." Opp. 15. This statement is contrary to the evidence, which Clear does not dispute (*see* Clear Response to SUF No. 60 (Dkt. No. 127)) and, in any case, irrelevant since Clear has abandoned its exclusive dealing claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                              Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

were not members of the conspiracy). *See, e.g.*, *Interstate Circuit v. United States*, 306 U.S. 208, 219, 59 S. Ct. 467, 471 (1939) (horizontal price-fixing impacting third party theaters); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 36, 46-47, 80 S. Ct. 503, 507, 513 (1960) (horizontal agreement to suspend discount advertising and maintain prices to third party consumers); *United States v. Gen. Motors Corp.*, 384 U.S. 127, 143, 86 S. Ct. 1321, 1329 (1966) (horizontal group boycott of third-party discounters); *United States v. Apple*, *Inc.*, 791 F.3d 290, 297 (2d Cir. 2015) (horizontal agreement among publishers to raise e-book prices on third party consumers). None of the cases addressed a vertical territory allocation and none affected the provision of services *solely to the alleged hub of the conspiracy* (here, Comcast). It is undisputed that Comcast's decision, for example, to assign work for Comcast to Clear in the South Valley area or OCC in the Sacramento Valley did not affect the ability of buyers other than Comcast—regardless of location—to obtain installation services from Clear, other realigned contractors, or from any of the hundreds of other available contractors in the marketplace. SUF 60.

Clear claims *per se* analysis is appropriate under a hub-and-spoke theory because the contractors allegedly "traded" employees and facilities to effectuate the realignment plan. Opp. 17. First, even if true, there could still be no *per se* liability because, as explained above, the realignment plan was a vertical territorial allocation subject to the rule of reason, not a *per se* horizontal market division. Second, there is no evidence Comcast entered into agreements with contractors to "trade" employees and facilities. Rather, the evidence Clear cites shows Comcast merely suggested that contractors inform one another if they had employees that "███████ ███████████████████████████████████████████████████████████████" or "███████ ██████████████" because of the realignment. Opp. 2; *see also* SUF 62.[4] There was no requirement or agreement that contractors would trade employees or facilities. Third, Clear's own

---

[4] Clear reads too much into documents describing "teamwork" or "coordination" among contractors to effectuate the realignment. Opp. 4. A realignment of this nature requires logistical coordination among those involved. That is insufficient to show a horizontal conspiracy that has an undeniable "pernicious" effect on competition. Nor is there any evidence to support Clear's contention that Comcast "micromanag[ed]" contractors or required contractors to terminate employees. Opp. 4-5. Rather, the undisputed evidence shows that contractors were free to retain their employees or facilities, and generally manage their business, as they wished. SUF 67.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7    Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

cases hold that an alleged hub-and-spoke conspiracy that lacks agreement between the spokes is not actionable. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010); *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1280 (8th Cir. 1983); *Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc.*, 459 F.2d 138, 147 (6th Cir. 1972).

Despite Clear's unsupported assertion that there had to be a conspiracy, there is no evidence—and Clear does not cite to any—that the contractors agreed with one another to a market allocation scheme. SUF 61-68; *see also* Rocca Aff. Ex. 4 (OCC Rule 30(b)(6) Dep. (Freeman) at 91:11-92:14) (Dkt. No. 100-4) ("OCC Dep."). Nor is there any evidence that contractors agreed to "trade" employees or facilities. It is undisputed that both Clear and OCC offered affected employees the ability to stay with their respective companies if they wished, and all employees that wanted jobs at other contractors had to apply for those positions. SUF 66-68. Contractors like OCC redeployed some affected employees to other accounts rather than letting them go after the realignment. OCC Dep. at 52:21-24 (stating that "option A" was for employee to take "positions in other places" with OCC). Not only was there no agreement to "trade" employees or facilities, there is no evidence that any "trading" actually occurred.

Finally, Clear makes the curious argument that Comcast could not have simply terminated contractors as part of the realignment plan and needed contractors to trade employees and facilities because "none of the contractors could instantly absorb the routes of a single territory." Opp. 14. First, some contractors were, in fact, terminated as part of the realignment plan. SUF 42. Second, Comcast assigned Clear the South Valley and Central Valley areas because it believed Clear was best equipped to service those areas. SUF 44-46. As Clear's subsequent performance proved, Comcast was mistaken. SUF 73-77; 81-84. After Comcast terminated Clear, OCC took over the South Valley area with limited notice, which demonstrates that well-run contractors could quickly "absorb the routes of a single territory" if necessary. SUF 88.

## V. CLEAR SUFFERED NO ANTITRUST INJURY OR DAMAGES

### A. Clear Cannot Prove Antitrust Injury

Although Clear claims the realignment plan violated the antitrust laws, it does not dispute that its injuries were the result of its termination, not the realignment plan. Opp. 6. Because there

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

8   Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

is no "causal nexus between [Clear's] injury and the alleged unlawful restraint of trade," Clear has no antitrust claim. *Clayworth v. Pfizer*, 49 Cal. 4th 758, 774 (2010); *see also* MSJ 18-20.

Clear's reliance on a *per se* theory exacerbates this fundamental flaw. Under Clear's characterization of the realignment plan, Clear itself participated in a so-called horizontal conspiracy "whereby Contractors that had historically competed in multiple territories would now control a single service area." Opp. 1. Specifically, Clear claims it understood that "Contractors would no longer compete in their respective territories" under the plan. *Id*. 9. The problem with Clear's characterization is that Clear only stood to *benefit* from a "horizontal competitors' agreement not to compete with one another in some designated area of trade." *Id.* In fact, Clear's real complaint is that it did not receive the benefits from a true market allocation scheme. So, for example, Clear claims there was an agreement to allocate territories with an "expectation" that "the Contractors would be free of competition in those territories," but that Comcast purportedly "renege[d] on its promises to Clear" that it would get "territorial exclusivity." Opp. 1, 5, 10. Instead, Clear claims that Comcast's alleged "false statements" "destroyed" Clear's business because it was terminated and allegedly "left with millions of dollars in damages as a direct result of Comcast's fraudulent scheme." *Id*. 5-6; *see also* Moody Decl. ¶¶ 37-41. The underlying basis of Clear's claim, therefore, is that "unbeknownst to the Contractors, *the Contractors remained competitors throughout the realignment*." *Id*. 9 (emphasis added).

Whatever injury Clear claims to have suffered as a result of any alleged "promises" that were broken when it was terminated, that injury is not the result of an *anticompetitive* scheme. Clear has suffered no antitrust injury, *i.e.*, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 698 (1977); *accord Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 495 (2011). It is undisputed that competition between contractors continued after the realignment and that OCC was able to replace Clear in the Central and South Valleys. SUF 80; 88. Clear claims it was injured by this continued competition and seeks damages under the theory that Comcast promised Clear an exclusive territory under the realignment plan. But Clear's claimed injury is not one the antitrust

laws were designed to prevent and it does not "flow from that which makes" a market allocation scheme unlawful. Clear's lack of antirust injury, alone, is sufficient to dispose of its claims.

### B. Clear Did Not Suffer Damages From the Realignment Plan

As Comcast detailed in its motion, it is undisputed that Clear suffered, on average, losses in the years before it was terminated. MSJ 19; SUF 95. Nevertheless, Clear asks for millions of dollars in future lost profits damages based on an adjustment to Clear's operating income to account for Moody's excessive compensation and unnecessary boat expenses, which turns expected future losses into expected future profits. *See* MSJ 19-20 (citing undisputed evidence). Clear's only response is that "[m]ost companies operate at zero net revenue or losses to minimize tax liability" and that what matters is whether it "would have posted a greater profit or lesser loss but for Comcast's anticompetitive conduct." Opp. 18-19. First, Comcast did not force Clear to pay Moody an excessive salary to reduce "tax liability," thus draining its profits and allowing Clear to operate at a loss. Clear cannot ask for damages for lost revenue that would have been paid to Moody, who is not a plaintiff in this case. Only Clear, not Moody, has sued for damages, and its *actual* profits or loss—not hypothetical profits based on the unwarranted assumption that an average CEO would be paid $200,000 per year instead of $1 million per year—govern whether it can recover damages for future lost profits. Second, when discussing future lost profits, it does not matter that Clear would have suffered "lesser loss" in the future since it went out of business and suffered no loss at all. In other words, Clear cannot base a claim for damages on the theory that it would have lost less money in the but-for world, when it suffered no losses in the actual world because it went out of business.

## VI. CONCLUSION

The Court properly concluded the rule of reason applies to Clear's case theory and permitted discovery into that theory. Clear was given an opportunity to attempt to develop its case and it declined to do so. Clear's *per se* theory is a non-starter. This case involves nothing more than a poor performing vendor that was terminated by a buyer who admittedly has no market power. The Court should grant summary judgment in favor of Comcast on all of Clear's claims.

//

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10   Case No. 2:12-cv-02910-TLN-DB
COMCAST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Dated: March 2, 2017 | MORGAN, LEWIS & BOCKIUS LLP |
| | By */s/ Brian Rocca* |
| |     Brian C. Rocca |
| | Attorney for Defendant and Counterclaimant |
| | COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC |