UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR CONNECTION CORPORATION, a California corporation, CLEAR CONNECTION, LLC, an Arizona limited liability company, and KURK MOODY, an individual,<br><br>        Plaintiff/Counter-Defendant.<br><br>    v.<br><br>COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Delaware limited liability company,<br><br>        Defendant/Counterclaimant. | No.  2:12-cv-02910-TLN-DB<br><br>**ORDER** |

This matter is before the Court pursuant to Counter-Claimant Comcast Cable Communications Management, LLC's ("Comcast") Motion for Summary Judgment. (ECF No. 103.)  Counter-Defendants Clear Connection Corporation ("Clear"), Clear Connection, LLC ("Clear LLC"), and Kurk Moody ("Moody") filed an opposition (ECF No. 117), and Comcast filed a reply (ECF No. 143).  For the reasons set forth below, the Court DENIES Comcast's motion.

///

///

1

## I.     Factual and Procedural Background

On January 1, 2009, Comcast and Clear entered into a Preferred Vendor Agreement ("PVA"). (ECF No. 117-1 at ¶ 1.) The 2009 PVA was effective from January 1, 2009, to December 31, 2009. (*Id.* at ¶ 7.) Thereafter, on November 20, 2009, Comcast and Clear entered into a First Amendment to the 2009 PVA that modified the 2009 PVA to continue beyond December 31 on a month-to-month basis. (*Id.* at ¶ 9.) The 2009 PVA continued in effect until April 30, 2010, and Comcast and Clear entered into the 2010 PVA on May 1, 2010. (*Id.* at ¶¶ 8–9.) On January 31, 2011, the 2010 PVA was terminated. (*Id.* at ¶ 16.)

The 2009 and 2010 PVAs both contained an identical indemnification provision. (*Id.* at ¶ 3.) Paragraph 17 of the PVAs stated:

> [Clear] shall indemnify and hold harmless, and at [Comcast's] election, defend [Comcast] . . . from and against . . . all claims, . . . losses, . . . lawsuits, . . . and costs (including but not limited to attorneys' fees and court costs) arising out of or in connection with . . . [a]ny claims by third parties for acts or omissions committed by [Clear] or its Sub-Contractor as an alleged agent of [Comcast] . . . .

(*Id.* at ¶¶ 3, 11; ECF No. 106-1 at 23.) The PVAs stated the indemnification provisions would survive for a period of five years after the termination of the respective PVA. (ECF No 117-1 at ¶¶ 4, 13.)

On March 26, 2010, former Clear employees filed a putative class action against Clear and Comcast in San Francisco County Superior Court, entitled *Delgado, et al. v. Clear Connection Corp., et al.*, No. CGC-10-498150 ("the *Delgado* action"). (*Id.* at ¶ 17.) In the action, the plaintiffs alleged state and federal wage and hour law violations. (*Id.* at ¶ 18.) The *Delgado* plaintiffs also claimed Comcast was their joint employer and thus jointly liable for Clear's alleged wage and hour violations.[1] (*Id.* at ¶ 19.)

On April 1, 2010, Andrew Topping, who was Comcast's Vice President, Deputy General Counsel, and Co-Chief Compliance Officer, sent a letter to Moody requesting Clear confirm it

---

[1] After filing the *Delgado* action, the parties stipulated to transfer venue to Sacramento County Superior Court. (ECF No. 104 at 9.) As a result, Delgado re-filed his complaint against Clear and Comcast in Sacramento Superior Court, entitled *Delgado v. Clear Connection Corp., et al.*, Case No. 34-2010-00079614. (ECF No. 117-1 ¶ 22.) The re-filed *Delgado* action contained the same allegations of wage and hour violations and joint employer liability. (*Id.* at ¶ 23.)

would indemnify Comcast for any liability associated with the *Delgado* action and for Comcast's legal expenses in defending the action. (*Id.* at ¶ 20.) On May 3, 2010, Clear's counsel responded and offered only to defend Comcast through Clear's own counsel. (*Id.* at ¶ 21.) However, Comcast rejected Clear's offer and defended itself through its own counsel. (*See id.* at ¶ 35.)

In November 2011, Clear settled with the *Delgado* plaintiffs resulting in the dismissal of the claims against Clear. (*Id.* at ¶ 27.) On January 6, 2012, the state court granted the *Delgado* plaintiffs' request to dismiss all claims against Clear without prejudice. (*Id.* at ¶ 28.) In support of the dismissal, Moody submitted a declaration stating Clear did not have the financial resources to either participate in the monetary settlement or to continue to defend itself in the action. (*Id.* at ¶ 29.) On October 18, 2013, January 9, 2014, and January 16, 2014, the named *Delgado* plaintiffs signed settlement agreements with Comcast. (*Id.* at ¶ 32.) On April 18, 2014, the state court dismissed the *Delgado* action in its entirety. (*Id.* at ¶ 34.)

Clear filed a complaint against Comcast in the Sacramento County Superior Court on August 6, 2012, bringing various claims related to Comcast's contractor realignment plan and subsequent termination of Clear. (ECF No. 1-1.) On November 30, 2012, Comcast removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1 at ¶¶ 6–11.) On January 18, 2013, Comcast filed an answer to Clear's complaint and alleged counterclaims against Clear, Clear LLC, Moody, and Eugene Stanley.[2] (ECF No. 9.) On December 24, 2013, Clear filed its First Amended Complaint ("FAC") against Comcast. (ECF No. 42.) On March 7, 2014, Comcast filed an answer to Clear's FAC and re-alleged its counterclaims. (ECF No. 50.)

On January 12, 2017, Comcast moved for summary judgment on its counterclaims: (1) breach of written contract; (2) indemnification; and (3) declaratory relief. (ECF No. 103.) Comcast also moves for summary judgment as to alter ego liability.[3] (*Id.*)

---

[2]   On June 7, 2013, Comcast agreed to dismiss its counterclaims against Eugene Stanley (ECF No. 28), and the Court approved (ECF No. 29).

[3]   In support of their respective briefings, the parties seek judicial notice of several filings from the *Delgado* action, the State Bar profiles from two of Comcast's attorneys in the *Delgado* action, and a related case, *Evans, et al. v. Clear Connection Corp., et al.*, Case No. 34-2010-00074902. (ECF Nos. 109, 122.) The Court GRANTS the requests. *Bias v. Moynihan*, 508 F.3d

3

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

///

---

1212, 1225 (9th Cir. 2007); Fed. R. Evid. 201.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III.   ANALYSIS**

    A.   <u>Comcast's Breach of Contract and Indemnification Claims</u>

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). To recover under an indemnification agreement, the indemnitee must establish: (1) the parties' contractual relationship; (2) the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim; (3) the facts showing a loss within the meaning of the parties' indemnification agreement; and (4) the amount of damages sustained.

*Four Star Elec., Inc. v. F & H Constr.*, 7 Cal. App. 4th 1375, 1380 (1992).

Comcast moves for summary judgment as to its breach of contract and indemnification claims, arguing it has established all elements of those claims as a matter of law.  Because the elements of Comcast's breach of contract claim and indemnification claim mirror each other, and because Clear opposes summary judgment as to both claims for identical reasons, the Court addresses the claims together.  *See Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 552 (2008) ("[A]n [indemnity] agreement is construed under the same rules as govern the interpretation of other contracts."); *see also Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968) (addressing indemnity and breach of contract claims together because the gravamen of each claim involved rights of action arising from the same contract).

### i. The Existence of a Contract

At the outset, Clear does not dispute the existence of a valid contract.  The evidence shows that Comcast and Clear entered into two contracts — the 2009 PVA and the 2010 PVA.  (ECF No. 117-1 ¶¶ 1, 9.)  The PVAs provided in relevant part that Clear would indemnify Comcast for all claims, losses, lawsuits, and costs arising out of or in connection with any claims by third parties for acts or omissions committed by Clear or Clear's subcontractor as an alleged agent of Comcast.  (*Id.* ¶¶ 3, 11.)  Neither party has provided any evidence or argument to suggest the contracts were somehow invalid.  Therefore, the Court presumes the existence of enforceable contractual obligations between the parties for the purposes of ruling on the instant motion.

### ii. Performance of the Contract

Clear argues the evidence does not demonstrate Comcast fully performed its obligation under the PVAs by paying Clear for all the work Clear performed.  Clear emphasizes that Moody discussed the amount Comcast owed Clear for work performed and stated Comcast paid "[m]aybe not all of it, but some of it."  (ECF No. 106-2 at 7; *see also* ECF No 106-5 at 14.)  However, as Comcast correctly notes, Comcast's lack of full performance does not bar indemnification.  Indeed, Clear provides no legal authority requiring Comcast pay in full in order to enforce Clear's indemnification obligations, nor does Clear provide any evidence to suggest Comcast's partial performance was insufficient.

"An indemnitee seeking to recover on an agreement for indemnification must allege . . . the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim." *Four Star Elec.*, 7 Cal. App. 4th at 1380. In other words, an indemnification provision indicating an ongoing indemnity obligation does not require the indemnitee's full performance of the contract. *Id.* at 1382 (holding the indemnitee's full performance of the contract not necessary to assert indemnification clause when the clause required indemnity for liabilities which "accrue" during the life of the agreement).

Here, the PVAs show an ongoing obligation to indemnify. The relevant provision provides Clear would indemnify Comcast for claims, losses, lawsuits, and costs "arising out of or in connection with" any claims by third parties for acts or omissions by Clear or its subcontractor as an alleged agent of Comcast. (ECF No. 117-1 ¶¶ 3, 11.) This language does not require Comcast's complete performance of the contract, nor does it require Comcast wait until the conclusion of the contract before it may invoke the indemnification provision. Therefore, while Comcast may not have fully performed under the PVAs, its partial performance is sufficient to invoke the indemnification provision. *See Four Star Elec*, 7 Cal. App. 4th at 1382.

### iii. Breach of the Contract

The evidence shows Clear breached the contract by not indemnifying Comcast for Comcast's losses and costs arising from the *Delgado* action. The *Delgado* action claimed Clear violated wage and hour laws and alleged Comcast was jointly liable as a joint employer. (ECF No. 117-1 ¶¶ 18–19, 23.) Thus, the indemnity provisions apply because Comcast's losses and costs were incurred in connection with claims in *Delgado* for acts or omissions by Clear. Further, the PVAs stated the indemnification provisions would survive the PVAs' termination for five years. (*Id.* at ¶¶ 4, 13.) With the termination of the 2010 PVA on January 31, 2011 (*id.* at ¶ 16), the indemnification obligation continued until January 31, 2016. Comcast incurred attorneys' fees and costs in the *Delgado* action from April 2010 until April 2014, and Comcast made the *Delgado* settlement payments in April 2014. (*Id.* at ¶¶ 33, 35.) As such, Comcast's attorneys' fees, costs, and settlement payments fall within the indemnification time period.

Although it is undisputed that Clear has not indemnified Comcast for the losses, Clear

contends Comcast is not entitled to indemnification because Comcast rejected Clear's offer of defense. (ECF No. 117 at 12.) During the *Delgado* action, Clear offered to defend Comcast through Clear's own counsel, but Comcast declined the offer and defended the lawsuit through its own counsel. (*See* ECF No. 117-1 ¶¶ 21, 35.)

The PVAs stated Clear "shall indemnify and hold harmless, *and* at [Comcast's] election defend, [Comcast]." (ECF No. 106-1 at 23 (emphasis added).) Thus, the PVAs provided Comcast two separate rights: the right to indemnification by Clear, and if Comcast elected, the right to defense by Clear. *See Crawford*, 44 Cal. 4th at 551 (stating parties may contract, in the event of third-party claims, for one party to indemnify the other, and may also assign one party responsibility for the other's legal defense).

Clear relies on *Buchalter v. Levin*, wherein the court stated, "absent some contractual privilege so to do or some showing of sufficient justification or need therefor, an indemnitee ordinarily may not refuse to join in or cooperate with the indemnitor's proffered defense and still recover his separate and redundant attorneys' fees and costs." 252 Cal. App. 2d 367, 371 (1967). But *Buchalter* is distinguishable because, unlike this case, it did not involve a contract that expressly provided both the right to indemnification *and* the separate right to defense at the indemnitee's election. *Id.* at 370. The *Buchalter* court also emphasized that the contract at issue expressly stated the indemnitees had "no desire to become involved" in potential litigation, which manifested the indemnities' intent to accept the indemnitor's legal representation. *Id.* at 375. Here, the contract expressly contemplates Comcast might elect not to be defended and still be separately entitled to indemnification. Thus, unlike *Buchalter*, Comcast's rejection of Clear's offer of defense did not impact Comcast's right to indemnification.

Because Comcast still had the right to indemnification even after rejecting Clear's offer of defense, Clear breached the contract by not indemnifying Comcast for Comcast's losses and costs stemming from the *Delgado* action.

### *iv.   Damages*

Clear argues even if Comcast is entitled to indemnification, there is a triable issue as to the amount of damages, specifically attorneys' fees incurred in the *Delgado* action.

1    "[A] promise of indemnity against claims, demands, or liability 'embraces the costs of
2    defense against such claims, demands, or liability' insofar as such costs are incurred reasonably
3    and in good faith." *Crawford*, 44 Cal. 4th at 553 (quoting Cal. Civ. Code § 2778(3)). In the
4    Ninth Circuit, "[d]istrict courts must calculate awards for attorneys' fees using the 'lodestar
5    method.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland*
6    *v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (internal quotation marks
7    omitted). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party
8    reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quoting *Ferland*, 244
9    F.3d at 1149 n.4) (internal quotation marks omitted). Further, the lodestar is also used when
10   determining the reasonableness of attorneys' fees owed pursuant to an indemnification
11   agreement. *See ConsumerTrack, Inc. v. Blue Ocean Ads, LLC*, No. CV 17-2404 PA (FFMx),
12   2017 WL 7369117, at *2 (C.D. Cal. Oct. 24, 2017).

13   The party seeking the attorneys' fees bears the burden of producing documentary evidence
14   demonstrating the number of hours spent on and rates in the litigation. *McCown v. City of*
15   *Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Further, the party seeking attorneys' fees must
16   also produce satisfactory evidence that its rates are in line with those in "the community for
17   similar services by lawyers of reasonably comparable skill, experience, and reputation."
18   *Camacho*, 523 F.3d at 980. Once the party seeking attorneys' fees has met its burden, the burden
19   then shifts to the opposing party to submit evidence challenging the accuracy and reasonableness
20   of the hours charged, the facts of the affidavit, and calculations. *Ruff v. County of Kings*, 700 F.
21   Supp. 2d 1225, 1228 (E.D. Cal. 2010).

22   Here, Clear argues Comcast has not met its burden to demonstrate that the attorneys' fees
23   it requests indemnification for are in line with those in the community for similar services by
24   lawyers of reasonably comparable skill, experience, and reputation. The Court agrees. In support
25   of its motion, Comcast has provided evidence of the amount it spent in defending itself in the
26   *Delgado* action. (ECF No. 114.) Comcast has also produced an invoice from its counsel in
27   *Delgado* detailing the services counsel rendered, the hours worked, and the hourly rates. (ECF
28   No. 114-1.) Comcast summarily argues that it "incurred these expenses . . . in good faith and in

the exercise of reasonable discretion." (ECF No. 104 at 16.) Yet Comcast has not produced any evidence, by affidavits from its attorneys or otherwise, as to how the attorneys' fees incurred defending itself in the *Delgado* action are reasonable. *See Camacho*, 523 F.3d at 980. Thus, Comcast has not established damages as a matter of law. Because Comcast has not established an element of its breach of contract and indemnification claims, the Court DENIES Comcast's motion for summary judgment as to those claims.

B.  Alter Ego Theory

In addition to seeking indemnification from Clear, Comcast also advances an alter ego argument in which it seeks to pierce the corporate veil and obtain relief directly from Clear LLC and Moody. "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Turman v. Superior Court*, 17 Cal. App. 5th 969, 980 (2017) (internal quotation marks and citations omitted). Under California law, "'[a]lter ego is an extreme remedy, sparingly used.'" *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1069 (S.D. Cal. 2017) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000)). Thus, a "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." *Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016) (citation omitted).

"Two requirements must be met to invoke the alter ego doctrine: (1) 'there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist'; and (2) 'there must be an inequitable result if the acts in question are treated as those of the corporation alone.'" *Turman*, 17 Cal. App. 5th at 980–81 (quoting *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538). Further, "the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact." *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2011); *see also TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1020 (N.D. Cal. 2012).

i.  *Exclusion of Evidence Under Rule 37(c)(1)*

As a preliminary matter, Clear argues Comcast's alter ego arguments should be limited to the facts set forth in Comcast's written discovery responses because Comcast did not supplement

an interrogatory response with the additional facts it now uses to support its alter ego theory. (ECF No. 117 at 20.)

Rule 26(e) provides that a party who has responded to an interrogatory must supplement its response "if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Clear was aware of the additional facts Comcast seeks to use in arguing its alter ego theory. The additional facts stem from sources Clear had knowledge of, such as Clear's expert witness report and depositions of Moody and former Clear LLC employees that Clear's counsel defended. (*See, e.g.*, ECF Nos. 90-1, 106-9, 106-19, 106-21.) Because Clear had been made aware of these additional facts during the discovery process, Comcast was not required to supplement its interrogatory response under Rule 26(e). Accordingly, the additional facts are not excluded under Rule 37(c)(1).

### ii. *Inequitable Result*

Assuming Comcast will be able to establish the unity of interest and ownership requirement, there still exists a genuine issue of material fact as to whether there would be an inequitable result if the corporate veil is not pierced. Comcast argues injustice will result because: (1) recovery from Clear may be impossible due to Clear's lack of sufficient financial resources; and (2) Moody and Clear LLC reaped the benefits Clear received from Comcast without sharing in Clear's responsibilities. (ECF No. 104 at 19–20; ECF No. 143 at 12–13.)

Comcast's arguments are unpersuasive. As indicated, California courts have consistently held that difficulty in enforcing a judgment alone is insufficient to justify piercing the corporate veil. *E.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017); *Hub City Solid Waste Servs., Inc. v. City of Compton*, 186 Cal. App. 4th 1114, 1123 (2010); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 842 (1962). "There must be some conduct

amounting to bad faith that makes it inequitable for [the defendant] to hide behind the corporate form." *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011).

Turning to Comcast's argument that an inequitable result arises from Moody and Clear LLC's reaping the benefits of Comcast's relationship with Clear while avoiding Clear's responsibilities, the Court finds Clear raises a genuine issue of material fact. One assertion underlying the alleged inequitable result focuses on Moody hiding Clear's profits by overcompensating himself. (ECF No. 143 at 13.) In its statement of facts, Comcast cites to testimony in Clear's expert report that Moody was paid above market levels. (ECF No. 105 ¶ 41.) Moody's annual compensation as the owner and CEO of Clear was roughly $1,000,000 per year from 2006 to 2009. (ECF No. 117-1 ¶ 40.) In analyzing Moody's compensation, Clear's expert calculated an annual fair market compensation for Moody was $200,000. (ECF No. 90-1 at 23.) The expert derived this figure from examining compensation rates for CEOs of non-manufacturing companies. (*Id.*) However, as Clear notes in disputing Comcast's statement of facts, Moody was also the owner of Clear, not merely the CEO. (ECF No. 117-1 ¶¶ 41–42.) Because the expert compared Moody's compensation to that of CEOs and not individuals who are both owner and CEO, there exists a genuine issue of material fact as to whether Moody was in fact overcompensating himself and thereby hiding Clear's profits.[4]

Alternatively, Comcast argues an inequitable result arises from Clear's breach of contract with Comcast by "refus[ing] and fail[ing] to honor its indemnity obligations." (ECF No. 143 at 13.) However, breach of contract alone is insufficient to establish inequitable result for purposes of an alter ego claim — the breach must be willful. *See Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010) (recognizing willful breach as bad-faith conduct in the context of alter ego liability). Here, Comcast contends Clear refused to honor its indemnification agreement, but it has not argued Clear's breach was willful or intentional. (*See* ECF Nos. 104, 143.) Consequently, it is uncertain whether an inequitable result will occur absent piercing the corporate veil.

---

[4] Comcast argues Clear cannot create a dispute with Clear's own damages expert. (ECF No. 144 ¶¶ 41–42.) However, Comcast provides no support or legal authority for this argument.

1        In sum, Comcast has not met its heavy burden to pierce the corporate veil because it has
2 not established the inequitable result necessary to support its alter ego theory. Accordingly, the
3 Court DENIES Comcast's motion for summary judgment as to its alter ego theory.

         C.      Declaratory Relief

        To qualify for declaratory relief, a party must demonstrate its action presents: "(1) a proper subject for declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party." *Lee v. Silveira*, 6 Cal. App. 5th 527, 546 (2016) (citation and internal quotation marks omitted). "[D]eclaratory relief 'operates prospectively to declare future rights, rather than to redress past wrongs.'" *Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 51 F. Supp. 3d 937, 950 (E.D. Cal. 2014) (quoting *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan*, 150 Cal. App. 4th 1487, 1497 (2007)). Thus, "where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief *may* be denied." *Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 366 (2010) (emphasis in original).

        Here, Comcast seeks declaratory relief relating to Clear, Clear LLC, and Moody's failure to indemnify Comcast for legal expenses in the *Delgado* action. (ECF No. 50 ¶ 45.) As such, Comcast's counterclaim for declaratory relief is redundant of its other counterclaims for breach of contract and indemnification because they all stem from Clear not indemnifying Comcast for Comcast's legal expenses in *Delgado*. Because Comcast is seeking damages representing a total of its fees, costs, and settlement costs in *Delgado*, (ECF No. 113 at 20), the Court observes no reason why money damages — which remain to be determined — would not be an adequate remedy. Thus, declaratory relief may be denied. *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (2013), *as modified on denial of reh'g* (Mar. 7, 2013) (affirming summary adjudication on declaratory judgment claim where plaintiff could pursue relief under alternative causes of action and claim sought primarily to adjudicate the legality of past conduct); *see also Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action"). Further, Comcast has already fully incurred all legal expenses in defending the *Delgado*

action because the *Delgado* action was settled and dismissed in 2014.  Therefore, declaratory relief is inappropriate because the record clearly reflects Comcast seeks to redress past wrongs, not declare future rights.  *See Pub. Serv. Mut. Ins. Co.*, 51 F. Supp. 3d at 950.  Finally, in light of the Court's rejection of Comcast's alter ego arguments against Clear LLC and Moody, Comcast is not entitled to declaratory relief relating to Clear LLC and Moody indemnifying Comcast.

Accordingly, the Court DENIES Comcast's motion for summary judgment with respect to its claim for declaratory relief.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Comcast's Motion for Summary Judgment as to its counterclaims.  (ECF No. 103.)  The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

DATED:  November 16, 2020

Troy L. Nunley
United States District Judge